UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -v- | 22-CR-293 (JPO) |
| JOWENKY NUNEZ JR.,<br>   a/k/a "Juju," | ORDER |
| BRIAN HERNANDEZ,<br>   a/k/a "Malikai," | |
| IYAURY RODRIGUEZ-ROSARIO,<br>   a/k/a "Bricha," | |
| Defendants. | |

J. PAUL OETKEN, District Judge:

Attached to this order is a copy of the Court's final jury charge, the trial indictment, and

the verdict form to be provided to the jury at the start of deliberations.


SO ORDERED.

Dated:  May 1, 2025
        New York, New York


_____
              J. PAUL OETKEN
          United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

             -v-

JOWENKY NUNEZ, JR.,
   a/k/a "Juju,"

BRIAN HERNANDEZ,
   a/k/a "Malikai,"

IYAURY RODRIGUEZ-ROSARIO,
   a/k/a "Bricha,"
                 Defendants.

22 Cr. 293 (JPO)

## JURY CHARGE

# Contents

I.    Introductory Instructions ................................................................................. 5

II.   General Instructions ....................................................................................... 6

   1.    Role of the Court ..................................................................................... 6

   2.    Role of the Jury ....................................................................................... 6

   3.    Role of Counsel / Objections .................................................................. 7

   4.    Sympathy or Bias; Punishment ............................................................... 7

   5.    Presumption of Innocence and Burden of Proof ..................................... 8

   6.    Reasonable Doubt .................................................................................... 9

   7.    What Is and Is Not Evidence ................................................................. 10

   8.    Direct and Circumstantial Evidence ..................................................... 11

   9.    Witnesses Generally .............................................................................. 12

     A.    Credibility ........................................................................................ 12

     B.    Expert Witnesses ............................................................................. 13

     C.    Bias of Witnesses ............................................................................ 13

     D.    Preparation of Witnesses ................................................................. 14

     E.    Conclusion ....................................................................................... 14

   10.   Uncalled Witnesses ............................................................................... 15

   11.   Persons Not on Trial .............................................................................. 15

   12.   Defendant's Testimony .......................................................................... 15

   13.   Government Witness Testimony ............................................................ 15

   14.   Cooperating Witness Testimony ........................................................... 16

   15.   Summary Charts ..................................................................................... 18

   16.   Translations ........................................................................................... 18

   17.   Redaction of Evidentiary Items ............................................................ 18

   18.   Investigations ........................................................................................ 19

   19.   Searches ................................................................................................. 19

III.  Substantive Instructions ............................................................................... 19

   1.    Meaning and Summary of the Indictment ............................................. 19

   2.    Unlawfully, Knowingly, Intentionally, and Willfully .......................... 22

   3.    Law of Conspiracy ................................................................................ 23

     A.    First Element: Existence of Conspiracy .......................................... 24

B.    Second Element: Membership in the Conspiracy ........................................... 25

C.    Evidence in a Conspiracy ............................................................................... 27

D.    State Conspiracy Law ..................................................................................... 27

4.    Aiding and Abetting ................................................................................................ 29

A.    State Aiding and Abetting Law ...................................................................... 31

5.    Count 1: Racketeering Conspiracy ......................................................................... 32

A.    Introduction and elements .............................................................................. 32

B.    First Element — Existence of the Enterprise ................................................. 33

C.    Second Element — Effect on Interstate Commerce ...................................... 36

D.    Third Element — Association with the Enterprise ........................................ 37

E.    Fourth Element — Membership in a Conspiracy to Participate in a Pattern of Racketeering Activity ........................................................................................ 37

F.    Special Interrogatories .................................................................................... 44

6.    Counts 2 and 4: Murder in Aid of Racketeering .................................................... 45

A.    First, Second, and Third Elements ................................................................. 45

B.    Fourth Element: Murder ................................................................................. 45

C.    Fifth Element: In Aid of Racketeering ........................................................... 46

7.    Counts 3 and 5: Murder Through the Use of a Firearm .......................................... 47

A.    First Element – Use / Carry / Possess a Firearm ........................................... 48

B.    Second Element – During and in Relation to a Crime of Violence ............... 49

C.    Third Element – Causing Death ...................................................................... 49

D.    Fourth Element – Death Qualifies as Murder ................................................ 50

E.    Fifth Element – Knowingly ............................................................................ 50

8.    Counts6, 8, 10, 12, 14, 16, 18, and 20: Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering ........................................................................................ 52

A.    First, Second, and Third Elements ................................................................. 53

B.    Fourth Element: Assault with a Dangerous Weapon or Attempted Murder ................. 54

C.    Fifth Element: In Aid of Racketeering ........................................................... 55

9.    Counts7, 9, 11, 13, 15, 17, 19, 21, and 24: Firearms Use, Carrying, and Possession in Connection with of a Crime of Violence or Drug-Trafficking Crime ...................................... 56

A.    Additional Instruction: Count 24 ................................................................... 58

B.    First Element: Crime of Violence *or* Drug-Trafficking Crime .................................... 58

C.    Second Element: Use / Carry / Possess a Firearm ......................................... 59

D.    Special Interrogatory: Brandish and/or Discharge ......................................... 61

10.     Count 22: Attempted Murder and Assault with a Dangerous Weapon and Assault Resulting in Serious Bodily Injury in Aid of Racketeering.................................... 63

11.     Predicate Acts for Racketeering Conspiracy vs. Substantive Crimes in Aid of Racketeering ............................................................................................... 66

12.     Count 23: Narcotics Conspiracy ................................................. 67

    A.    First Element: Existence of the Conspiracy................................... 68

    B.    Second Element: Membership in the Conspiracy............................ 71

    C.    Special Interrogatories: Drug Type and Quantity.......................... 72

13.     Count 25: Interstate Transport or Receipt of Firearms ................... 75

    A.    Definitions..................................................................................... 75

    B.    First Element – Not Licensed ...................................................... 76

    C.    Second Element – Transportation Into or Receipt in State of Residence ............ 76

    D.    Third Element – Willfulness....................................................... 77

    14.    Venue ...................................................................................... 79

    15.    Variance in Dates .................................................................... 80

IV.    Final Instructions ................................................................................ 82

    1.    Right to See Exhibits and Hear Testimony; Communications with Court ...................... 82

    2.    Notes ........................................................................................ 83

    3.    Duty to Deliberate / Unanimous Verdict ....................................... 83

    4.    Selecting a Foreperson and the Foreperson's Duties ....................... 84

    5.    Verdict Form and Return of Verdict ............................................. 84

    6.    Oath........................................................................................... 84

    7.    Alternatives ............................................................................... 85

I.    **INTRODUCTORY INSTRUCTIONS**

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the lawyers.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.  I am now going to instruct you on the law that governs the case.  There are three parts to these instructions:

First, I will provide you with some general instructions about your role and about how you are to decide the facts of the case.  These instructions would apply to just about any trial.  Second, I will give specific instructions about the legal rules applicable to this particular case.  Third, I will give you instructions on the general rules governing your deliberations.

Listening to these instructions may not be easy.  It is important, however, that you listen carefully and concentrate.  I ask you for patient cooperation and attention.  You'll notice that I'm reading these instructions from a prepared text.  It would be more lively, no doubt, if I just improvised.  But it's important that I not do that.  The law is made up of words, and those words are very carefully chosen.  So it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two.  But for now, listen carefully and try to concentrate on what I'm saying.  You are to consider these instructions together as a whole; you are not to isolate or give undue weight to any single instruction.

## II.    GENERAL INSTRUCTIONS

### 1.  Role of the Court

It is my duty to instruct you on the law, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant for your consideration.  It is your duty to accept my instructions on the law and to apply them to the facts as you determine them.

On legal matters, you must take the law as I give it to you.  You may not substitute your own notions or opinions of what the law is or ought to be.  You should not be concerned about the wisdom of any rule that I state.  Regardless of any opinion that you may have as to what the law is — or should be — it would violate your sworn duty to base a verdict upon any view of the law other than that which I give you.

If any attorney has stated a legal principle different from what I tell you, you must follow my instructions.  You should not single out any particular instruction as alone stating the law.  You should consider my instructions as a whole as you deliberate.

You should not infer from anything I have said or done during this trial that I have any view on the credibility of the witnesses or any view about how you should decide the case.  I have no opinion as to the facts or the verdict that you should render in this case.

### 2.  Role of the Jury

You are the sole and exclusive judges of the facts.  You determine the credibility of the witnesses.  You resolve any conflicts that might exist in the evidence.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight to give the various pieces of evidence.

You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone. You may not consider or speculate on matters not in evidence or matters outside the case.

### 3. Role of Counsel / Objections

As I told you at the outset of the case, it is the duty of the attorneys to object when the other side offers testimony or evidence that the attorney believes is not properly admissible. Therefore, you should draw no inference from the fact that an attorney objected to evidence. Nor should you draw any inference from the fact that I might have sustained or overruled an objection.

From time to time, the lawyers and I had conferences outside of your hearing. These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

To be clear, the personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

### 4. Sympathy or Bias; Punishment

You are required to evaluate the evidence calmly and objectively, and you must be completely fair and impartial. Your verdict must be based solely on the evidence introduced at this trial, or the lack of evidence. The parties in this case are entitled to a trial free from prejudice or bias for or against either side. Our judicial system works only if you reach your verdict through a completely fair and impartial consideration of the evidence.

In deciding the facts of the case, it would be improper for you to consider any personal feelings you may have about any party or any witness or any other such irrelevant factor. Likewise, it would be improper for you to consider any personal feelings—positive or negative—you may have about a defendant's or a witness's race, religion, national origin, sex, or age.

Under your oath as jurors, you cannot allow consideration of possible punishment that may be imposed upon a defendant, if convicted, to influence you or enter into your deliberations. The duty of imposing sentence is mine and mine alone. Your function is to weigh the evidence and to determine whether each defendant is or is not guilty on each charge based on the evidence and the law.

This case must be decided by you as an action between parties of equal standing in the community and of equal worth. The fact that the government is a party and the prosecution is brought in the name of the United States does not entitle the government or its witnesses to any greater consideration than that accorded to any other party. By the same token, you must give it no less deference. All parties are entitled to the same fair trial. The government and the defendants stand as equals before the law and are to be dealt with as equals in this Court.

## 5.  Presumption of Innocence and Burden of Proof

Each defendant is charged with more than one crime. Please bear in mind that a charge is not evidence of anything and that each defendant is presumed innocent of each charge.

The government has the burden of proving every element of each charge beyond a reasonable doubt. If the government succeeds in meeting its burden on a particular charge, your verdict must be guilty on that charge; if it fails, your verdict must be not guilty on that charge. The burden of proof never shifts to the defendant. The law presumes every defendant to be

innocent and therefore never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

In reaching a verdict, you also must bear in mind that guilt is individual. Your verdict as to each defendant must be determined separately with respect to him solely on the evidence, or lack of evidence, presented against him without regard to the guilt or innocence of anyone else. Whether you find a particular defendant guilty or not guilty as to one offense should have no bearing on your verdict as to the other offenses charged.

In other words, as to <u>each</u> charge, <u>each</u> defendant starts with a clean slate and is presumed innocent until such time, if ever, that you as a jury are satisfied that the government has proven, beyond a reasonable doubt, that he is guilty of that crime.

## 6. Reasonable Doubt

The question then becomes: what is a reasonable doubt?

The words almost define themselves. It is a doubt based upon reason and common sense. It is a doubt that a reasonable person has after carefully weighing all of the evidence. It is a doubt that would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life. Proof beyond a reasonable doubt must, therefore, be proof that is so convincing that a reasonable person would not hesitate to rely upon it in making an important decision in his or her own life.

Proof beyond a *reasonable* doubt is not, however, proof beyond all *possible* doubt. A reasonable doubt is not a doubt based on caprice or whim. Nor is it a doubt based on speculation or suspicion. Reasonable doubt is also not an excuse to avoid the performance of an unpleasant duty.

If, after fair and impartial consideration of all the evidence, you have a reasonable doubt as to a defendant's guilt as to a particular charge, then you must find him not guilty on that charge. On the other hand, if after fair and impartial consideration of all the evidence, you are satisfied beyond a reasonable doubt of a defendant's guilt on that charge, then you must find him guilty of that charge.

### 7. What Is and Is Not Evidence

I want to take a moment to describe to you what is and is not evidence in this case. As I have said, you must rely only on evidence in your deliberations. The evidence in this case is the sworn testimony of the witnesses, the exhibits, and the stipulations that were received in evidence. Other things are not evidence.

1.  A question by a lawyer is not evidence. The witnesses' answers are evidence, not the questions. Similarly, documents that lawyers provided to witnesses to refresh their recollection are not evidence; only the witnesses' answers are evidence.

2.  Arguments by lawyers are not evidence. What the attorneys said in their opening statements and in their summations was intended to help you understand the evidence and to reach a verdict. If your recollection of the evidence differs from what any attorney said, it is your recollection that controls.

3.  Statements that I may have made concerning the evidence are not evidence.

4.  Testimony that has been stricken or excluded is not evidence, and it may not be considered by you in rendering your verdict.

5.  Anything you may have seen or heard outside the courtroom is not evidence.

Now I will discuss what is evidence.  Evidence may come in several forms:

     1.    The sworn testimony of witnesses, regardless of who called the witness, is evidence.  This is true of the witnesses' answers on both direct and cross examination.

     2.    The exhibits that were admitted during the trial are evidence.

     3.    The stipulations that all parties agreed to and were read during the trial are evidence.  You must accept as true the facts to which the parties stipulated.  Some of the stipulations were about what a witness would have said if he or she had been called to testify.  You must accept as true the fact that the witness would have given that testimony, but it is up to you to determine the weight or importance of that testimony.

**8.  Direct and Circumstantial Evidence**

Generally, there are two types of evidence that you may consider in reaching your verdict: direct and circumstantial.

Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses — something that he or she has done, seen, felt, touched, or heard.  For example, if a witness testified that on the day in question she was in her office, and she could see through the window that it was raining all day, that would be direct evidence about the weather on that day.

 Circumstantial evidence is evidence of one fact from which you may infer the existence of other facts.  For example, assume that a witness testified that his office does not have a window.  On the day in question, however, he saw numerous people arrive at work with wet

raincoats and carrying dripping umbrellas. That testimony about wet raincoats and dripping umbrellas is circumstantial evidence that it was raining that day. So even though you have no direct evidence regarding the weather, you have circumstantial evidence that it was raining.

With circumstantial evidence, you must be careful to draw reasonable inferences that reflect all of the evidence. For example, if you live in the city and wake up in the morning and see that the sidewalk is wet but the street is dry, it is not reasonable to infer that it rained last night. Instead, a more reasonable inference is that the building staff has hosed down the sidewalk.

That is all there is to circumstantial evidence. You infer on the basis of reason and common sense from one fact (in my first example, dripping raincoats and umbrellas) the existence or non-existence of some other fact (in that case, rainy weather). When circumstantial evidence is presented, it is of no less weight than direct evidence. The law makes no distinction between direct and circumstantial evidence, but simply requires that, before convicting a defendant, the jury must be satisfied that the government has proven a defendant's guilt beyond a reasonable doubt, based on all of the evidence in the case.

### 9. Witnesses Generally

#### A. Credibility

You have had the opportunity to observe the witnesses. You are the sole judges of the credibility of each witness and of the importance of his or her testimony. Decide what testimony to believe and what not to believe. You may consider each witness's demeanor and manner of testifying; the witness's opportunity to see, hear, and know about the events described; the witness's ability to recall and describe those things; and the reasonableness of the testimony in light of all of the other evidence in the case. Consider whether part of a witness's testimony was

contradicted or supported by other testimony, by what the witness said or did on a prior occasion, or by the testimony of other witnesses or by other evidence.

If you find that a witness has testified falsely as to an important matter, you may disregard the witness's entire testimony, or you may accept as much of the testimony as you find to be true and disregard what you find to be false. A witness may have been mistaken or may have lied in part of his or her testimony while having been accurate and truthful in other parts.

## B. Expert Witnesses

You have also heard testimony from expert witnesses. Experts are witnesses who have acquired learning or experience in science or a specialized area of knowledge by education, experience, or training. They are permitted to give their opinions on matters in which they profess to be experts and to give the reasons for their opinions. Someone who is experienced in a field may assist you in understanding the evidence and in reaching your independent decision of the facts. Your role in judging credibility applies to experts as well as other witnesses. You should judge the expert testimony the same way that you judge the testimony of any other witness. In weighing expert testimony, you should consider the factors that generally bear upon the credibility of a witness, as well as the expert witness's education, training and experience, the soundness of the reasons given for the opinion, and all the other evidence in the case.

## C. Bias of Witnesses

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witness may have had for or against the defendant you are considering. Likewise, you should consider evidence of any other interest or motive that the witness may have.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. If you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness is interested in the outcome of the case does not mean the witness has not told the truth. It is for you to decide based on your observations, your common sense, your experience, and all the other considerations mentioned whether the possible interest of a witness in the outcome of the case has intentionally or otherwise colored or distorted his or her testimony. You are not required to believe or disbelieve an interested witness; you may accept as much of the testimony as you deem reliable and reject as much as you deem unworthy of belief.

### D.  Preparation of Witnesses

You have heard evidence during the trial that certain witnesses met with the attorneys before that witness appeared in court. There is nothing either unusual or improper about a witness meeting with lawyers before testifying. These meetings allow the witness to know the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. Such consultation makes the trial process more efficient.

What weight, if any, you give to the fact or nature of the witness's preparation for his or her testimony, and what inferences you draw from such preparation, are matters completely within your discretion.

### E.  Conclusion

Stepping back, what you must try to do in deciding any witness's credibility is to size them up just as you would in any person in your life, and try to decide if they have been truthful, straightforward, and accurate in their recollection.

### 10. Uncalled Witnesses

There are several persons whose names you have heard during the course of the trial who did not testify. Each party had the power to subpoena witness to testify on their behalf. You should not draw any inferences or reach any conclusions as to what such witnesses would have said had they been called.

### 11. Persons Not on Trial

Some of the people who may have been involved in the events at issue in this trial are not on trial. You may not draw any inference from the fact that persons other than the defendants were not defendants in this trial. Nor may you speculate as to the reasons why other persons are not on trial. Those matters are wholly outside your concern and have no bearing on your function as jurors.

### 12. Defendant's Testimony

Under our Constitution, a defendant has no obligation to testify or to present any evidence.

In this case, JOWENKY NUNEZ, JR., BRIAN HERNANDEZ, and IYAURY RODRIGUEZ-ROSARIO did not testify. You may not attach any significance to the fact that they did not testify. You may not draw any adverse inference against them because they did not testify. No defendant is ever required to prove that he is innocent.

### 13. Government Witness Testimony

You have heard testimony from employees of the government. The fact that a witness may be employed by the federal government as a law enforcement official or employee does not mean that his or her testimony is deserving of more or less consideration or greater or lesser

weight than that of an ordinary witness.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement or government employee witness and to give to that testimony the weight you find it deserves.

### 14. Cooperating Witness Testimony

You have heard testimony from witnesses who are cooperating with the government, namely Ariel Olivier, D'Angel Hernandez, Manuel Pimentel, Allen Ferreira, and Olbeny Diaz. These witnesses pleaded guilty to certain crimes and they each entered into a cooperation agreement with the government. I will refer to these witnesses as "cooperating witnesses" because they were cooperating with the government. The law allows the use of their testimony, which is properly considered by the jury. Like the testimony of any other witness, a cooperating witness's testimony should be given such weight as it deserves in light of all the facts and circumstances. I have given you some general considerations on credibility. However, let me say a few things that you may want to consider during your deliberations on the subject of cooperating witnesses.

Cooperating witness testimony is of such a nature that it should be scrutinized with great care and viewed with particular caution. The fact that a witness is a cooperating witness should be considered by you in evaluating his testimony. The weight to be given to the fact of the witness's cooperation is up to you. . However, it does not follow that, simply because a person has admitted participation in one or more prior crimes, he is incapable of giving truthful testimony. You should, of course, consider whether the testimony was motivated by reward or self-interest or hostility to the defendant. You should ask yourself whether the cooperating witness would benefit more by lying or by telling the truth. Was his testimony made up in any

16

way based on a belief that false testimony would somehow result in favorable treatment?  Or did

he believe that his interests would best be served by testifying truthfully?  If you believe a

witness was motivated by personal gain, was the motivation one that would cause him to lie, or

was it one that would cause him to tell the truth?  And did this motivation color the witness's

testimony?

        Obviously, you should reject the testimony if you find it was false.  However, if after a

cautious and careful examination of the testimony and the witness's demeanor, you are satisfied

that the testimony is true, you should accept it as credible and act on it accordingly.  You may

also accept parts and reject parts of a cooperating witness's, or of any witness's, testimony, as I

explained earlier.

        You have heard testimony and arguments regarding an agreement between the

government and these particular witnesses.  It is of no concern of yours why the government has

made an agreement with a witness.  Your sole concern is to decide whether the witness has given

truthful testimony in this Court before you.  Further, you are to draw no conclusions or

inferences about the defendants from the fact that a witness pleaded guilty and entered into an

agreement with the government.  The fact that a witness decided to plead guilty to certain

charges arising from his conduct is a personal decision, and you may not consider the fact that a

witness decided to plead guilty against the defendants.

        In sum, you should look to all the evidence in deciding what credence and what weight, if

any, you will give to the testimony of the cooperating witness.

**15. Summary Charts**

The parties have presented certain exhibits in the form of charts and summaries.  These exhibits purport to summarize the underlying evidence that was used to prepare them.

I admitted these charts and summaries in order to save time.  They are no better evidence than the testimony or documents upon which they are based.  You should consider these charts and summaries as you would any other evidence.

There have also been summary charts and exhibits introduced merely as summaries or analyses of testimony and documents in the case.  The charts and exhibits act as visual aids for you.  They are not, however, evidence in themselves.  They are graphic demonstrations of underlying evidence.  It is the underlying evidence and the weight which you attribute to it that gives value and significance to these charts.  To the extent that the charts conform to what you determine the underlying facts to be, you should accept them.  To the extent that the charts differ from what you determine the underlying evidence to be, you may reject them.

**16. Translations**

You have seen translations of some of the documents that were admitted into evidence.  Because portions of those documents were in Spanish, the Court has admitted English language translations of them into evidence.  The written English translations are evidence.

In addition, some witnesses testified in Spanish, and their testimony was translated for you by a Court-appointed translator.  The English translation of that testimony is evidence.

You must accept these translations as evidence and consider them in reaching your verdict.  You must disregard any different meaning.  Of course, it is for you to decide what weight, if any, to give to this evidence.

**17. Redaction of Evidentiary Items**

Among the exhibits admitted into evidence were documents or transcripts that were redacted. "Redacted" means that part of the document was removed or blacked out. You are to concern yourself only with the part of the item that has been admitted into evidence. You should not consider any possible reason why the remainder has been redacted or speculate as to what may have been redacted that was not introduced into evidence.

### 18. Investigations

All of the evidence that was admitted at trial was lawfully collected and may be considered by you. The government's investigation, what it did and what it did not do, is not at issue. There is no legal requirement that law enforcement agents investigate crimes in a particular way or that the government prove its case through any particular means. The issue for you to decide is whether the evidence presented to you is sufficient to prove the crimes charged beyond a reasonable doubt.

### 19. Searches

You have heard testimony about certain evidence that was seized in searches of certain electronic devices. Evidence obtained from those searches was properly admitted in this case and may be considered by you. Whether you approve or disapprove of how the evidence was obtained should not enter into your deliberations because I now instruct you that the government's use of this evidence is lawful.

### III.    SUBSTANTIVE INSTRUCTIONS

### 1. Meaning and Summary of the Indictment

I will now turn to the charges against the defendants as contained in the Indictment. The defendants, JOWENKY NUNEZ, JR., BRIAN HERNANDEZ, and IYAURY RODRIGUEZ-ROSARIO, are formally charged with twenty-five counts. As I instructed you at the outset of

this case, the Indictment is a charge or accusation.  It is not evidence.  I will not read the entire indictment to you at this time.  Rather, I will first summarize the offense charged in the Indictment and then explain in detail the elements of that offense.

The charges in the Indictment include racketeering conspiracy; murder in aid of racketeering; violent crimes in aid of racketeering; using, carrying, or possessing a firearm in connection with a crime of violence; drug trafficking conspiracy; using, carrying, or possessing a firearm in connection with that drug trafficking conspiracy, and firearms trafficking.

Count 1 of the Indictment charges that from at least in or about 2018 through at least in or about August 2023, all three defendants participated in a racketeering conspiracy.

Counts 2 and 4 charge all three defendants with murder in aid of the racketeering enterprise charged in Count 1.  These charges are based on the July 2, 2020 murders of Richard Dominguez, a/k/a "Chikin," and Israel Cabrera, a/k/a "Gotti."

Counts 3 and 5 charge all three defendants with the use of a firearm to commit murder. These charges are also based on the July 2, 2020 murders of Richard Dominguez, a/k/a "Chikin," and Israel Cabrera, a/k/a "Gotti."

Counts 6, 8, 10, 12, 14, 16, 18, and 20 each charge a defendant or defendants with attempted murder and assault with a dangerous weapon in aid of racketeering.

Counts 7, 9, 11, 13, 15, 17, 19, and 21 each charge a defendant or defendants with using, carrying, or possessing a firearm — and brandishing and discharging a firearm — during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, or aiding and abetting the same.  Each of these charges is based on one of the murders or assaults with a dangerous weapon in aid of racketeering that are charged in Counts 6, 8, 10, 12, 14, 16, 18, and 20.

20

Count 22 charges defendant Nunez Jr. with attempted murder and assault with a dangerous weapon, and assault resulting in serious bodily injury, in aid of racketeering, based on a stabbing that occurred on or about February 28, 2023.

Count 23 charges all three defendants with participating in a conspiracy to violate the narcotics laws of the United States.

Count 24 charges all three defendants with knowingly using, carrying, and possession of a firearm during and in relation to a drug-trafficking crime for which they may be prosecuted in a court of the United States, namely, the narcotics conspiracy charged in Count 23.

Count 25 charges defendants Nunez Jr. and Rodriguez-Rosario with willfully and knowingly transporting into or receiving in the State where they reside firearms purchased or otherwise obtained outside that State, and aiding and abetting the same, without being licensed importers, manufacturers, dealers, or collectors of firearms.

2.  **Unlawfully, Knowingly, Intentionally, and Willfully**

Before I turn to a description of each offense, let me define several terms that I will use throughout these instructions.  Those terms are unlawfully, knowingly, intentionally, and willfully.

Unlawfully simply means contrary to law.  A defendant does not need to have known that he was breaking any particular law, but he must have been aware of the generally unlawful nature of his acts.

The terms "knowingly" and "intentionally" mean that a defendant knew what he was doing; in other words, that the defendant took the actions in question deliberately and voluntarily.  An act is done "knowingly" and "intentionally" if it is done deliberately and purposely; that is, the defendant's acts must have been the product of the defendant's conscious objective, rather than the product of a mistake or accident, or mere negligence, or some other innocent reason.

Science has not yet devised a manner of looking into a person's mind and knowing what that person is thinking.  The government has introduced into evidence certain acts and conversations alleged to have taken place with a defendant or in his presence.  The government contends that these acts and conversations show, beyond a reasonable doubt, the defendants' knowledge.  The defendants deny this.  Whether a defendant acted knowingly may be proved by his conduct and by all the facts and circumstances surrounding the case.

A person acts willfully when he acts intentionally and purposely with the intent to do something that the law forbids; that is, with the bad purpose to disobey or disregard the law.  It is not necessary that the person knew he was violating a particular law; it is enough if he was aware that what he was doing was in general unlawful.

### 3. Law of Conspiracy

Before I move on to the counts of the Indictment, I want to instruct you on a few concepts that apply to certain counts of the Indictment.

First, let me give you some general instructions on the concept of a conspiracy.

The law of conspiracy applies to Count 1, the charge of conspiracy to violate the federal racketeering statute, and Count 23, the charge of conspiracy to distribute and possess with intent to distribute certain controlled substances.

A conspiracy is a kind of criminal partnership – an agreement of two or more persons to join together to accomplish some unlawful purpose.

The crime of conspiracy, or agreement, to violate a federal law is an independent offense. It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as substantive crimes. Indeed, you may find a defendant guilty of the crime of conspiracy even if you find that the substantive crime or crimes that were the objects or goals of the charged conspiracy were never actually committed. Conspiracy, standing alone, is a separate crime, even if the conspiracy is not successful.

In general, the elements that the government must prove beyond a reasonable doubt to establish a conspiracy are as follows:

First, the existence of the conspiracy charged in the Indictment; that is, the existence of an agreement or understanding to commit the unlawful objects of the charged conspiracy. The first element then is: Did the conspiracy alleged in the Indictment exist? Was there such a conspiracy?

Second, the government must prove beyond a reasonable doubt that a defendant willfully and knowingly became a member of the conspiracy, with intent to further its illegal purposes — that is, with the intent to commit the objects of the charged conspiracy.

Now, let's separately discuss each of these elements.

### A. First Element: Existence of Conspiracy

The first element that the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that two or more people entered the unlawful agreement charged in the Indictment. To satisfy the first element of a conspiracy, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail in the scheme or the means by which its object or purpose was to be accomplished. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more persons to cooperate with each other to accomplish an unlawful act.

You may, of course, find that the existence of an agreement to disobey or disregard the law has been established by direct proof. However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words. Sometimes, the only evidence that is available with respect to the existence of a conspiracy is that of disconnected acts and conduct on the part of the alleged individual co-conspirators. When taken altogether and considered as a whole, however, these acts and conduct may warrant the inference that a conspiracy existed as conclusively as would direct proof. On this issue, you should refer back to my earlier instructions on direct and circumstantial evidence and inferences.

The object of a conspiracy is the illegal agreement that the co-conspirators agree or hope to achieve. The conspiracy charged in Count 1 had the alleged object of conducting and

participating in the affairs of the racketeering enterprise through a pattern of racketeering activity. The conspiracy charged in Count 23 had the alleged object of violating the narcotics laws of the United States by distributing controlled substances or possessing controlled substances with the intent to distribute them.

### B. Second Element: Membership in the Conspiracy

The second element that the government must prove beyond a reasonable doubt to establish the offense of conspiracy charged in the Indictment is that a defendant unlawfully, intentionally, and knowingly became a member of the conspiracy.

If you are satisfied that the conspiracy charged in the Indictment existed, you must next ask yourselves: Who were the members of that conspiracy? In deciding whether a defendant was, in fact, a member of the conspiracy, you should consider whether that defendant knowingly, willfully, and voluntarily joined the conspiracy. Did he participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its business or objective?

#### i.     "Willfully" and "Knowingly"

I already instructed you on the meaning of the terms "willfully" and "knowingly," and you should apply those instructions here. To satisfy its burden of proof that a defendant willfully and knowingly became a member of a conspiracy to accomplish an unlawful purpose, the government must prove beyond a reasonable doubt that the defendant knew that he was a member of a conspiracy to accomplish that unlawful purpose, and that his action of joining such a conspiracy was not due to carelessness, negligence, or mistake.

In this context, I instruct you that to become a member of the conspiracy, a defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities. Moreover, a defendant need not have been fully informed as to

all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part.

The extent and duration of a defendant's participation in the conspiracy have no bearing on the issue of that defendant's guilt. He need not have joined the conspiracy at the outset. A defendant may have joined it at any time in its progress, and may still be held responsible for all that was done before he or she joined and all that was done during the conspiracy's existence while he was a member, as long as you find that the defendant joined the conspiracy with knowledge as to its general scope and purpose. Indeed, each member of a conspiracy may perform separate and distinct acts and may perform them at different times. Some conspirators may play major roles, while others may play minor parts in the scheme. An equal role is not what the law requires. Even a single act may be sufficient to draw a defendant within the ambit of the conspiracy.

I want to caution you, however, that a defendant's mere presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy. Similarly, a person may know, assemble with, or be friendly with, one or more members of a conspiracy, without being a conspirator himself. Mere similarity of conduct or the fact that a person may have discussed common aims and interests does not necessarily establish proof of a conspiracy. I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient.

Moreover, the fact that the acts of a person, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make that person a member. More is required under the law. What is necessary is that the person must have participated with

knowledge of at least some of the purposes or objects of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

Once a conspiracy is formed, it is presumed to continue until either its objective is accomplished or there is some affirmative act of termination by the members. So too, once a person is found to be a member of a conspiracy, he is presumed to continue as a member in the conspiracy until the conspiracy is terminated, unless it is shown by some affirmative proof that the person withdrew and disassociated himself from it.

Ultimately, the question is this: Has the government proven beyond a reasonable doubt that each defendant joined the conspiracy and knowingly and intentionally participated in it with the awareness of its basic purpose and as something he wished to bring about?

### C.  Evidence in a Conspiracy

When people enter into a conspiracy to accomplish an unlawful end, they become agents or partners of one another in carrying out the conspiracy. In determining the factual issues before you, you may take into account against a defendant the acts or statements made by any co-conspirators in furtherance of the conspiracy, even though such acts or statements were not made in the presence of that defendant or were made without his knowledge.

### D.  State Conspiracy Law

I am also going to instruct you on conspiracy law under New York State Law. That is because, as you will see, Count 1, which concerns racketeering activity, incorporates some state penal law as well. I raise this now because there are slight differences between the definitions of conspiracy in state law and federal law. Please apply federal conspiracy law when considering violations of federal law, and state conspiracy law when considering violations of state law for certain racketeering acts alleged in Count 1. Accordingly, I will now instruct you on New York's conspiracy law.

In order for the government to prove beyond a reasonable doubt that a person conspired to commit a crime under New York state law, the government must show the following:

First, that the individual agreed with one or more other persons to engage in or cause the performance of the crime;

Second, that the individual did so with the intent that such crime be performed; and

Third, that the individual, or one of the people with whom he agreed to engage in or cause the performance of the conduct, committed an overt act in furtherance of the conspiracy.

The term "intent" under New York conspiracy law has its own special meaning. Intent means conscious objective or purpose.

The government must also prove that one of the conspirators committed an overt act in furtherance of the conspiracy. The agreement to engage in or cause the performance of a crime is not itself an overt act. The overt act must be an independent act that tends to carry out the conspiracy. The overt act can be, but need not be, the commission of the crime that was the object of the conspiracy.

Note that under state law, unlike the federal law I have described to you, an overt act is an element of a conspiracy. Accordingly, when considering an intended racketeering act that is alleged to be a violation of New York State's conspiracy law, consider whether a defendant agreed that a co-conspirator would commit an overt act in furtherance of that racketeering act. When considering, however, either an intended racketeering act that is alleged to be a violation of federal conspiracy law—or considering the conspiracy charged in Count 1 or Count 23—you need not find an overt act.

### 4. Aiding and Abetting

The second concept I want to instruct you on is the concept of aiding and abetting.

All but the two conspiracy counts—that is, Counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, and 25—charge a defendant with both committing certain criminal acts, and with aiding and abetting the commission of those acts.

As to each of those crimes, the defendant you are considering can be convicted either if he committed the crime himself or if he "aided and abetted" the commission of the crime by one or more people. It is not necessary for the government to show that the defendant himself physically committed a crime in order for you to find him guilty. If you do not find beyond a reasonable doubt that the defendant physically committed a crime, you may, under certain circumstances, still find him guilty of the crime as an aider and abettor.

Aiding and abetting liability is its own theory of criminal liability. In effect, it is a theory of liability that permits a defendant to be convicted of a specified crime if the defendant, while not himself committing the crime, assisted another person or persons in committing the crime. I will instruct you on both federal and New York State aiding and abetting law because the Indictment alleges aiding and abetting violations of both federal and New York State statutes. Please apply federal aiding and abetting law when considering violations of federal law, and state aiding and abetting, also known as "acting in concert," law when considering violations of state law

The principle that an aider and abettor of a crime is also liable under federal law is contained in a statute called Title 18, United States Code, Section 2. Under the federal aiding and abetting statute, whoever aids, abets, counsels, commands, induces, or procures the commission of an offense is punishable as a principal. You should give these words their ordinary meaning.

In order to prove a defendant guilty as an aider or abettor of a crime under federal law, the government must prove:

First, another person (or persons) actually committed the crime; and

Second, that the defendant, knowing that such a crime was being committed, willfully and knowingly associated himself in some way with that crime; and

Third, that the defendant willfully and knowingly took some action to help the crime succeed; in other words, that the defendant engaged in some affirmative conduct for the specific purpose of bringing about the crime.

I have already defined the terms "willfully" and "knowingly" for you, and you should apply those definitions here.

Please note, however, that the mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or the mere acquiescence by the defendant in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding and abetting.

To be found guilty, the government must prove that an aider and abettor took some conscious action that furthered the commission of the crime and that he did so with the intent to bring about the crime.  To determine whether a defendant aided and abetted a crime, ask yourself: Did he participate in the crime charged as something he wished to bring about?  Did he associate himself with the criminal venture knowingly?  Did he seek by his actions to make the criminal venture succeed?  If he did, then the defendant is an aider and abettor, and therefore guilty of the offense.  If he did not, then the defendant is not an aider and abettor, and therefore not guilty under an aiding and abetting theory.

## A.  State Aiding and Abetting Law

As you will see in a moment, the pattern of racketeering activity charged in Count 1 is alleged to have included the aiding and abetting of crimes under the New York Penal Law.  New York Penal Law Section 20.00 applies to aiding and abetting, also called "acting in concert," and provides as follows: "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes or intentionally aids such person to engage in such conduct."

Under that definition, mere presence at the scene of a crime, even with knowledge that the crime is taking place (or mere association with a perpetrator of a crime), does not by itself make a defendant criminally liable for that crime.  For a defendant to be held criminally liable for the conduct of another that constitutes an offense under New York State law, you must find beyond a reasonable doubt:

First, that the defendant solicited, requested, commanded, importuned, or intentionally aided that person to engage in the conduct; and

Second, that the defendant did so with the state of mind required for the commission of the offense.

5. **Count 1: Racketeering Conspiracy**

   A. **Introduction and elements**

I will now move to the most complicated charge. Count 1 charges each defendant with conspiring to commit a violation of the federal racketeering statute, which is Section 1962(c) of Title 18 of the United States Code. The statute is commonly referred to as "RICO," which stands for "Racketeering Influenced and Corrupt Organizations."

Let me stop here right at the outset and note that the word "racketeering," as used in this statute, is a purely technical term that is defined specifically for this statute. You should put out of your mind whatever meaning the term may have for you in ordinary English. What matters is not whether the defendants seem to you to be "racketeers" in any ordinary English sense of the word. All that matters is whether the government has proved beyond a reasonable doubt each of the elements that make up a violation of this statute, as I will define them for you.

The RICO statute, Section 1962(c), provides that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . .

The defendants here are charged in Count 1 with conspiring to violate that statute. The law that makes it a conspiracy to violate the RICO statute is Title 18 of the United States Code, Section 1962(d), which states:

It shall be unlawful for any person to conspire to violate any of the provisions of [the RICO laws].

Count 1 charges that the defendants participated in a conspiracy whose object was to conduct and participate in the conduct of a racketeering enterprise through a pattern of racketeering activity. The alleged racketeering enterprise is the Own Every Dollar or "OED" gang. Count 1 alleges that OED is a criminal organization whose members and associates

engaged in, among other things, acts involving actual or attempted murder, assault, narcotics trafficking, and unlawful interstate transport of firearms, and which operated in and around Manhattan and the Bronx, New York.

In order to find that a defendant conspired to violate Section 1962(c) through a pattern of racketeering activity, the government must prove beyond a reasonable doubt each of the following four elements:

First, that at or about the time charged in Count 1 of the Indictment, the racketeering enterprise alleged in the Indictment existed;

Second, that the enterprise was engaged in, or its activities affected, interstate or foreign commerce;

Third, that the defendant was employed by or associated with the enterprise; and

Fourth, that the defendant knowingly and willfully agreed with at least one other person to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as described in the Indictment.

If the government fails to prove any one of these elements beyond a reasonable doubt, then you must find the defendant not guilty.

I will now discuss these elements in more detail.

### B.  First Element — Existence of the Enterprise

The first element the government must prove beyond a reasonable doubt with respect to Count 1 is that the racketeering enterprise alleged in the Indictment existed.  The Indictment describes the alleged enterprise as the "Own Every Dollar" gang or "OED."  Specifically, it alleges:

> Own Every Dollar, including its leadership, membership, and associates, constituted an "enterprise" (hereinafter the "OED Enterprise"), as defined by Title 18, United States Code, Sections 1961 ( 4) and 1959(b )(2), that is, a group of

individuals associated in fact, although not a legal entity. The OED Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the OED Enterprise. At all times relevant to this Indictment, the OED Enterprise was engaged in, and its activities affected, interstate and foreign commerce.

So, what is an enterprise? An "enterprise" means a group of people who have associated together for a common purpose, have an ongoing organization, either formal or informal, and have personnel who function as a continuing unit. Under the RICO statute, an enterprise does not have to have a particular name—or, for that matter, have any name at all. Nor must it be registered or licensed as an enterprise. It does not have to be a commonly recognized legal entity, such as a corporation, a trade union, a partnership, or the like. An enterprise may be a group of people informally associated together for a common purpose of engaging in a course of conduct. This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. Here, the government alleges that OED was such an enterprise.

In addition to having a common purpose, the enterprise must have a core of personnel who function as a continuing unit. Furthermore, the enterprise must continue to exist in substantially similar form for a period substantially similar to the period charged, which in this case was from at least in or about 2018 up through and including at least in or about August 2023. This does not mean that the membership must remain exactly identical. The members of the organization can change, and participants in its affairs may come and go, but the enterprise must have a recognizable core that continues during a substantial period within the time frame charged in the Indictment. In this case, the enterprise alleged is OED. The government need not prove that the enterprise had some particular name, but to convict a defendant, it is not sufficient

to find that the defendant was a member of some other or different criminal enterprise than the

one charged in the Indictment.

As I mentioned, the Indictment defines the charged enterprise as OED, about which it

alleges:

> Members and associates of the OED Enterprise engaged in a series of violent
> disputes with rivals of the OED Enterprise, including those within the OED
> Enterprise who they deemed disloyal to the OED Enterprise.  During these
> disputes, members and associates of the OED Enterprise committed multiple
> murders, shootings, and assaults against their rivals and against fellow members
> of the OED Enterprise.

> Members and associates of OED also sold fentanyl, heroin, cocaine, [and] cocaine
> base (crack cocaine) . . . in and around New York, New York, and the Bronx,
> New York.

> Members and associates of OED committed and agreed, attempted, and
> threatened to commit acts of violence to protect and expand their narcotics
> business, to protect fellow members and associates of the OED Enterprise, to
> otherwise promote the standing and reputation of OED amongst rival gangs, and
> to promote the standing and reputation of members of OED.  These acts of
> violence included acts involving murder and assault, intended to protect the OED
> Enterprise's narcotics business, and to retaliate against members of rival gangs
> who had encroached on the OED Enterprise's narcotics business.

Of course, the Indictment is not evidence, and may not be considered by you as evidence of the

guilt of any defendant.

The Indictment further alleges that the purposes of the charged enterprise included the

following:

> a.  Preserving and protecting the power, territory, and profits of the OED
>     Enterprise and its members and associates through acts involving murder, other
>     acts of violence, and threats of violence.

> b.  Promoting and enhancing the OED Enterprise and the activities of its members
>     and associates.

> c.  Keeping victims and potential victims in fear of the OED Enterprise and its
>     members and associates through acts and threats of violence.

d.  Providing assistance to members and associates who committed crimes for and on behalf of the OED Enterprise.

e.  Enriching the members and associates of the OED Enterprise through, among other things, the distribution and sale of narcotics, including fentanyl, heroin, cocaine, [and] cocaine base (crack cocaine) . . . .

f.  Protecting the OED Enterprise and its members and associates from detection and prosecution by law enforcement authorities through, among other things, acts of intimidation and violence against potential witnesses to crimes committed by members and associates of the OED Enterprise.

In summary, if the government proves beyond a reasonable doubt that there was a group of people characterized by (1) a common purpose or purposes, (2) an ongoing formal or informal organization or structure, and (3) core personnel who functioned as a continuing unit during a substantial period within the time frame charged in the Indictment, then an enterprise existed.

## C.  Second Element — Effect on Interstate Commerce

The second element the government must prove beyond a reasonable doubt with respect to Count 1 is that the enterprise was engaged in or had an effect upon interstate or foreign commerce.

Although the government must prove that the enterprise did or would engage in interstate commerce or that its activities did or would affect interstate commerce, the effect need not be substantial; a minimal effect is enough.  It is sufficient, for example, that, in the course of the racketeering activities, members of the enterprise traveled interstate, used telephone facilities interstate, or bought or sold drugs that had traveled in interstate commerce.  The commerce affected or potentially affected need not be lawful commerce.  Activities affecting or potentially affecting unlawful interstate activity such as narcotics trafficking fall within the purview of the statute.  Thus, if you find that the alleged racketeering enterprise trafficked in narcotics, you may find that the government satisfied this element, even if the primary activities of the enterprise all

occurred within a single state. Finally, it is not necessary for you to find that the defendants knew the enterprise was engaged in interstate commerce.

### D.  Third Element — Association with the Enterprise

The third element that the government must prove beyond a reasonable doubt with respect to Count 1 is that, at some time during the period charged in the Indictment, the defendant you are considering was associated with or employed by the enterprise. It is not required that the government prove that the defendant was associated with the enterprise for the entire time that the enterprise existed. The government must also prove that the defendant's association with the enterprise was knowing, that is, made with knowledge of the existence of the enterprise through a general awareness of some of its purposes, activities, and personnel. A person cannot be associated with or employed by an enterprise if he does not know of the enterprise's existence or the nature of its activities.

The government need not prove that a defendant agreed with every other member of the enterprise, knew all the other members of the enterprise, or had full knowledge of all the details of the enterprise. However, in proving this element, the government must prove beyond a reasonable doubt that the defendant was connected to the enterprise in some meaningful way, and that the defendant knew the general nature of the enterprise and knew that the enterprise existed beyond his individual role. If you find that the government has proven this element beyond a reasonable doubt, then the third element is satisfied.

### E.  Fourth Element — Membership in a Conspiracy to Participate in a Pattern of Racketeering Activity

The fourth element the government must prove beyond a reasonable doubt with respect to Count 1 is that the defendant knowingly and willfully agreed to conduct or participate, directly or

indirectly, in the conduct of the affairs of the charged enterprise through a pattern of racketeering activity.

A pattern of racketeering activity requires the commission of, or the intention to commit, at least two related acts of racketeering, by a defendant himself or by a co-conspirator, within ten years of each other.

The two acts forming the required "pattern of racketeering" may not be isolated or disconnected but must be related to each other by a common scheme, plan, or motive. The two acts must also amount to, or pose a threat of, continued criminal activity. In determining whether the acts constitute a pattern, you may consider whether the acts were closely related in time, whether the acts shared common victims or common goals, whether the acts shared a similarity of participants, and whether they shared a similarity of methods. If the same act was repeated more than once, you may also consider this as evidence that the acts were part of a pattern.

The focus of this element is on a defendant's agreement to participate in the objective of the enterprise to engage in a pattern of racketeering activity, and not on the defendant's agreement to commit the individual predicate acts themselves. The government must prove that the defendant participated in some manner in the overall objective of the conspiracy, and that the conspiracy involved or would have involved the commission of at least two racketeering acts. It may be established that an enterprise "engaged in" racketeering activity by evidence that individual members committed racketeering activity for the group or in concert with other members, or acted in ways that contributed to or furthered the purposes of the group, or that were facilitated or made possible by the group. For an enterprise to be engaged in racketeering activity, it is enough to show that the enterprise committed or was planning to commit some

racketeering activity within a period of time short enough under the circumstances so that it is appropriate to say that the enterprise was engaged in racketeering activity. The government is not required to prove either that the defendant agreed to commit two racketeering acts or that he actually committed two such acts, although you may conclude that he agreed to participate in the conduct of the enterprise from proof that he agreed to commit or actually committed such acts.

Stated another way, for purposes of the charged RICO conspiracy, the government does not have to prove that a defendant himself committed any of the charged offenses or acts. The government has to prove only that the defendant entered into the charged RICO conspiracy, and participated in the conspiracy, knowing and intending that he or any of his co-conspirators would commit or agree to commit two or more of the charged acts or offenses.

### i.     Predicate Acts: Overview

For purposes of Count 1, the Indictment alleges that the following categories of acts and offenses were committed, or were intended to be committed, as part of the RICO conspiracy:

- o   Murder, including attempted murder and conspiracy to commit murder, and aiding and abetting the same, in violation of New York State law (specifically in violation of New York Penal Law Sections 125.25, 105.15, 110.00, and 20.00);

- o   Offenses involving the distribution of controlled substances, including conspiracy to distribute controlled substances, with respect to fentanyl, heroin, cocaine, and cocaine base, in violation of federal law (specifically in violation of Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(A), and 846, and Title 18, United States Code, Section 2).

Again, the government must prove that, within a ten-year period, at least two related acts and offenses in violation of the above statutes were committed, or were intended to be

committed, by a particular defendant himself or by a co-conspirator as part of the charged RICO conspiracy. The government need not prove that the defendant himself committed or intended to commit any of these acts or offenses, so long as the government proves that the defendant participated in some manner in the overall objective of the conspiracy. In order to return a guilty verdict, you must be unanimous as to which two (or more) related acts of racketeering were committed or intended to be committed within ten years to constitute the charged pattern of racketeering activity.

I will now instruct you on the definition of each "predicate offense" that Count 1 of the Indictment alleges constitutes a pattern of racketeering activity.

### ii.    Predicate Acts: Murder

This racketeering act—murder, under New York law—includes four types of offenses: intentional murder, aiding and abetting murder, attempted murder, and conspiracy to commit murder. I will explain each of these to you now.

### Intentional Murder

Under New York State law, intentional murder is committed if: (1) an individual causes the death of another and (2) the individual does so with the intent to cause the death of the victim or another person.

To prove that a person caused the death of another, the government must prove that the defendant's conduct was a sufficiently direct cause of death of the victim, or a reasonably foreseeable result of the conduct. An obscure or merely probable connection between the conduct and the death will not suffice. At the same time, if a person's conduct is an actual contributory cause of the death of another, then it does not matter that such conduct was not the sole cause of the death, or that a pre-existing medical condition also contributed to the death, or

that the death did not immediately follow the injury. Death is a reasonably foreseeable result of the individual's conduct when the death should have been foreseen as being reasonably related to the actor's conduct. It is not required that the death was the inevitable result or even the most likely result.

The government must also prove that the person intended to cause the death of another person. Intent does not require premeditation. In other words, intent does not require advance planning. Nor is it necessary that the intent be in a person's mind for any particular period of time. The intent can be formed, and need only exist, at the very moment the person engages in prohibited conduct or acts to cause the prohibited result.

The question naturally arises as to how to determine whether or not a person had the intent required for the commission of a crime. To make that determination, you must decide if the required intent can be inferred beyond a reasonable doubt from the proven facts. In doing so, you may consider the individual's conduct and all of the circumstances surrounding that conduct, including, but not limited to, the following: (1) what, if anything, the individual did or said; (2) what result, if any, followed the individual's conduct; and (3) was that result the natural, necessary and probable consequence of that conduct.

### Aiding and Abetting Murder

The Indictment also includes the aiding and abetting of murder and attempted murder under New York State law. I have already instructed you on aiding and abetting liability under New York State law, and that instruction applies here as well. I have already instructed you on the concepts of acting unlawfully, knowingly, and intentionally, and those instructions apply here as well. Thus, you may find that murder was a predicate act if you find that the defendant

you are considering agreed that he or a co-conspirator would aid or abet the commission of an

intentional murder.

### Attempted Murder

This racketeering act also includes attempted murder under New York law.  Under New

York State Penal Law Section 110.00, a person is guilty of attempting to commit a crime when,

with the intent to commit that crime, he engages in conduct that tends to effect, to bring about,

the commission of such crime.  A person is guilty of an attempt to commit the crime of murder

under New York law if he, or a person he was aiding and abetting, was on the verge of actually

committing murder.  Mere preparation is not sufficient.  The acts committed by the person or

those he is aiding and abetting must be acts that are required to carry the project forward to

within a dangerous proximity of the intended criminal end.

### Conspiracy to Commit Murder

The racketeering act also includes conspiracy to commit murder under New York State

law.  Thus, you may find that murder was a predicate act if you find that the defendant you are

considering agreed that he or a co-conspirator would conspire with another to commit murder.

As I have already instructed, the law of conspiracy under New York State law differs

from the federal law of conspiracy, and for purposes of this predicate act, you are instructed to

apply the New York State law of conspiracy.  As a reminder, the primary difference between

New York State conspiracy law and federal law is that New York requires an additional element:

the requirement that an overt act be committed in furtherance of the conspiracy.  You are

instructed to apply this element only when determining whether a defendant has committed the

crime of conspiracy to commit murder under New York State law.

I recognize that this may be confusing because there are two levels of conspiracy here: an alleged conspiracy to participate in the overall racketeering enterprise, and an alleged conspiracy to commit murder. The first is the crime charged in Count 1. The second is a predicate offense that you may find to be an element of the crime charged in Count 1. When considering the overall racketeering conspiracy, you are to apply federal law, and therefore no "overt act" is required. When considering an alleged conspiracy to commit murder, you are to apply New York State law, and therefore an "overt act" is required.

### iii.      Predicate Acts: Narcotics

Another predicate act charged by the government in Count 1 is offenses involving the unlawful distribution of controlled substances—that is, acts involving drug trafficking—including aiding and abetting, and conspiracy to do the same, in violation of federal law.

In order to find that a person unlawfully distributed controlled substances under federal law, the government must prove that the person knowingly and intentionally distributed a controlled substance. Under Title 21, United States Code, Section 841, it is unlawful for any person knowingly or intentionally "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance," or to conspire, or agree, with another person to do so. I instruct you as a matter of law that fentanyl, heroin, cocaine, and cocaine base are all "controlled substances" under federal law. The government need not prove the purity of the controlled substances—any mixture or substance containing a detectable amount of a controlled substance is sufficient.

In determining whether each defendant agreed as part of the charged racketeering conspiracy that he or a co-conspirator would unlawfully distribute a controlled substance, you may apply the aiding and abetting and conspiracy instructions I gave you earlier. Thus, you may

find that distribution of controlled substances was a predicate act if you find that a defendant

agreed that (i) he or a co-conspirator would distribute controlled substances as I have defined

that crime, or (ii) he or a co-conspirator would aid or abet or conspire with another to do so.

The elements of distributing or possessing with the intent to distribute a controlled

substance are:

First, that the defendant distributed a controlled substance, or possessed a controlled

substance with the intent to distribute it, or aided and abetted the same;

Second, that he did so intentionally and knowingly; and

Third, that the substance involved was in fact a controlled substance.

I will define the terms "distribute," and "possession with intent to distribute," for you

later on, when I instruct you on Count 23, which charges the defendants with conspiring to traffic

narcotics, and you should apply those definitions here.

As a reminder, these predicate offenses are federal crimes, and you should therefore

apply the federal law of aiding and abetting and conspiracy here.

**F.  Special Interrogatories**

As to each defendant, if, and only if, you find that defendant guilty of Count 1, you must

then answer on the verdict sheet which racketeering acts the government has proven beyond a

reasonable doubt.  Each of your answers to these questions must be unanimous, meaning that all

jurors must agree on the answers.

\*      \*      \*

That concludes my instruction on Count 1.

6. **Counts 2 and 4: Murder in Aid of Racketeering**

Counts 2 and 4 charge all three defendants with murder in aid of the racketeering

enterprise charged in Count 1, in violation of Sections 1959(a)(1) and 2 of Title 18 of the United

States Code.  Count 2 is based on the July 2, 2020 murder of Richard Dominguez, a/k/a

"Chikin."  Count 4 is based on the July 2, 2020 murder of Israel Cabrera, a/k/a "Gotti."

As to each defendant, the government must establish beyond a reasonable doubt each of

the following elements for Counts 2 and 4:

First, that Own Every Dollar or OED, which is the charged enterprise, existed;

Second, that the enterprise engaged in racketeering activity;

Third, that the enterprise engaged in or affected interstate commerce;

Fourth, that the defendant committed a murder or aided and abetted the commission of a

murder; and

Fifth, that the defendant's general purpose in committing that offense was at least in part

to gain entrance to the enterprise, or to maintain or increase his position in the enterprise.

A. **First, Second, and Third Elements**

I have already defined for you in connection with Count 1 the first, second, and third

elements regarding the enterprise, racketeering activity, and interstate commerce, and you should

apply those instructions here.

B. **Fourth Element: Murder**

The fourth element that the government must prove beyond a reasonable doubt for

Counts 2 and 4 is that, as to each defendant, the defendant murdered, or aided and abetted in the

murder of, Richard Dominguez, a/k/a "Chikin," with respect to Count 2, and the defendant

murdered, or aided and abetted in the murder of Israel Cabrera, a/k/a "Gotti," with respect to

Count 4, in violation of New York law.

I have already explained for you the content and elements of the laws that define murder in the State of New York. I instruct you to follow those definitions here to determine if the government has satisfied its burden as to this element of Counts 2 and 4.

### C. Fifth Element: In Aid of Racketeering

The fifth element the government must prove beyond a reasonable doubt with respect to Counts 2 and 4, as to each defendant, is that the defendant's purpose in committing the relevant murder was to gain entrance to or to maintain or increase his position in the OED enterprise. This element can be satisfied even if the act of violence was committed against a fellow member of the enterprise, so long as the general purpose of committing the crime in question was to gain entrance to, increase his position in, or maintain his position in the enterprise.

The government need not prove that the defendant acted for all of these purposes. Nor is it necessary that this was the only purpose for committing the crime in question. It is sufficient as to this element if the government proves beyond a reasonable doubt that one of these purposes was a substantial motivating factor in the defendant's decision to participate in the crime.

The motive requirement is satisfied if the defendant committed the crime because it would allow the defendant to gain entrance to the enterprise, because the defendant knew it was expected of him by reason of his association with the enterprise, or because it would enhance the defendant's power or prestige within the enterprise, or to avoid losing power or prestige within the enterprise. These examples are by way of illustration only and are not meant to be exhaustive.

### 7. **Counts 3 and 5: Murder Through the Use of a Firearm**

Counts 3 and 5 charge the defendants with the use of a firearm to commit murder, in violation of Title 18, United States Code, Section 924(j). Count 3 is based on the July 2, 2020 murder of Richard Dominguez, a/k/a "Chikin." Count 5 is based on the July 2, 2020 murder of Israel Cabrera, a/k/a "Gotti." I will now instruct you on the elements of the offenses charged in Counts 3 and 5.

Title 18, United States Code, Section 924(j) makes it a crime for any person, "in the course of a violation of [Section 924(c)], [to] cause[] the death of a person through the use of the firearm." Section 924(c) makes it a crime for any person "during and in relation to any [federal] crime of violence or drug trafficking crime [to] use[] or carr[y] a firearm," or, "in furtherance of any such crime, [to] possess[] a firearm."

On Counts 3 and 5, the government must prove, beyond a reasonable doubt, each of the following five elements with respect to each defendant:

First, that on or about the date alleged in each count, the defendant used or carried or possessed a firearm, or any combination of those acts, or aided and abetted or willfully caused another person to do so;

Second, that the use or carrying of the firearm was during and in relation to a crime of violence, or possession of the firearm was in furtherance of such a crime;

Third, that the defendant you are considering, or a person he aided and abetted, caused the death of another person through the use of a firearm;

Fourth, that the death of that person qualifies as a murder under federal law, as I will define that term for you in a moment; and

Fifth, that the defendant you are considering acted knowingly.

## A.  First Element – Use / Carry / Possess a Firearm

The first element that the government must prove beyond a reasonable doubt for Counts 3 and 5 is that, on or about the date charged in each count, the defendant you are considering, or a person he aided and abetted, used, carried, or possessed a firearm.

Firearm: A firearm under the statute means "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive."  It does not matter if the firearm was loaded or operable at the time of the crime.  I instruct you that a gun is a firearm.

Use: In order to prove that someone used the firearm, the government must prove beyond a reasonable doubt an active employment of the firearm by the defendant you are considering, or that the defendant aided and abetted someone else's use of the firearm, during and in relation to the commission of the relevant crime of violence as I will describe momentarily.  This does not mean that the defendant you are considering, or the person he aided and abetted, must actually fire or attempt to fire the weapon, although those would obviously constitute use of the weapon. Brandishing, displaying, or even referring to the weapon so that other people knew that the person had the firearm available if needed all constitute use of the firearm.  The mere possession of a firearm at or near the site of the crime without active employment as I just described it is not, however, sufficient to constitute use of the firearm.

Carry: In order to prove that someone carried a firearm, the government must prove beyond a reasonable doubt that the defendant you are considering, or someone he aided and abetted, had the weapon within his control so that it was available in such a way that it furthered the commission of the relevant crime of violence.

Possess: In order to prove that someone possessed a firearm in furtherance of a crime, the government must prove beyond a reasonable doubt that the possession of the firearm advanced

or moved forward the crime.  The mere presence of a firearm is not enough.  Possession in furtherance requires that the possession be incident to and an essential part of the crime.  The firearm must have played some part in furthering the crime in order for this element to be satisfied.

### B.  Second Element – During and in Relation to a Crime of Violence

The second element that the government must prove beyond a reasonable doubt for Counts 3 and 5, as to each defendant, is that the defendant either used or carried a firearm during and in relation to a crime of violence, or possessed a firearm in furtherance of such a crime, or aided and abetted or willfully caused another person to do so.  You must find beyond a reasonable doubt that the defendant you are considering actually committed the underlying crime of violence.  Possession in furtherance, as I explained earlier, requires that the firearm must have played some part in furthering the crime in order for this element to be satisfied.

For Count 3, which charges the defendants with murder using a firearm in connection with the murder of Richard Dominguez, a/k/a "Chikin," the underlying crime of violence that must be proven beyond a reasonable doubt is the murder in aid of racketeering crime that is charged in Count 2.

For Count 5, which charges the defendants with murder using a firearm in connection with the murder of Israel Cabrera, a/k/a "Gotti," the underlying crime of violence that must be proven beyond a reasonable doubt is the murder in aid of racketeering crime that is charged in Count 4.

### C.  Third Element – Causing Death

The third element that the government must prove beyond a reasonable doubt as to Counts 3 and 5, with respect to each defendant, is that the defendant caused the death of a person through the use of a firearm, or aided and abetted or willfully caused the same.  The defendant

may be found to have caused the death of the victim if his conduct, or the conduct of a person he aided and abetted, was a substantial factor in causing the death and the victim would not have died except for that conduct. Conduct was a substantial factor if it had such an effect in producing the death that would lead a reasonable person to regard the conduct as a cause of death. The death of a person may have one or more than one cause. The government need not prove that the conduct of the defendant or the person he aided and abetted was the only cause of the victim's death, and you do not need to find that the defendant shot the victim or that he committed the final, fatal act. The government need prove only that the conduct of the defendant or the person he aided and abetted was a substantial factor in causing the death.

### D. Fourth Element – Death Qualifies as Murder

The fourth element that the government must prove beyond a reasonable doubt as to Counts 3 and 5, with respect to each defendant, is that the death of the relevant victim constituted murder under federal law. Under federal law, murder is defined as the unlawful killing of a human being with "malice aforethought." A killing is done with "malice aforethought" if it was done consciously with the intent to kill. The government must prove beyond a reasonable doubt that the act that caused death was done willfully, with a bad or evil purpose to break the law. But the government need not prove spite, malevolence, hatred, or ill will toward the victim in order to prove "malice aforethought."

### E. Fifth Element – Knowingly

The fifth and final element that the government must prove beyond a reasonable doubt as to Counts 3 and 5, with respect to each defendant, is that the defendant you are considering knew that he or the person he aided and abetted was using, carrying, or possessing a firearm and that he acted knowingly in doing so.

I already instructed you on the meaning of the term "knowingly," and you should apply

those instructions here

8. **Counts 6, 8, 10, 12, 14, 16, 18, and 20: Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering**

Counts 6, 8, 10, 12, 14, 16, 18, and 20 each charge certain defendants with attempted murder and assault with a dangerous weapon in aid of racketeering, in violation of Sections 1959(a)(3) and (a)(5), and 2, of the United States Code. Sections 1959(a)(3) and (a)(5) provide in relevant part as follows:

> Whoever . . . for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders . . . [or] assaults with a dangerous weapon, [or] commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, [is guilty of a crime.]

Count 6 charges defendant BRIAN HERNANDEZ with attempted murder and assault with a dangerous weapon in aid of racketeering based on a shooting that occurred on or about January 24, 2020.

Count 8 charges defendant BRIAN HERNANDEZ with attempted murder and assault with a dangerous weapon in aid of racketeering based on a shooting that occurred in or about February 2020.

Count 10 charges defendant BRIAN HERNANDEZ with attempted murder and assault with a dangerous weapon in aid of racketeering based on a shooting that occurred on or about May 15, 2020.

Count 12 charges defendants JOWENKY NUNEZ JR. and IYAURY RODRIGUEZ-ROSARIO with attempted murder and assault with a dangerous weapon in aid of racketeering based on a shooting that occurred on or about June 26, 2020.

Count 14 charges defendants JOWENKY NUNEZ JR. and IYAURY RODRIGUEZ-ROSARIO with attempted murder and assault with a dangerous weapon in aid of racketeering based on a shooting that occurred on or about July 5, 2020.

Count 16 charges defendant JOWENKY NUNEZ JR. with attempted murder and assault with a dangerous weapon in aid of racketeering based on a shooting that occurred on or about July 18, 2020.

Count 18 charges defendant JOWENKY NUNEZ JR. with attempted murder and assault with a dangerous weapon in aid of racketeering based on a shooting that occurred on or about October 22, 2020.

Count 20 charges defendant JOWENKY NUNEZ JR. with attempted murder and assault with a dangerous weapon in aid of racketeering based on a shooting that occurred on or about March 4, 2022.

With respect to these counts, in order for you to find the charged defendant or defendants guilty, the government must prove beyond a reasonable doubt each of the following elements:

First, that the charged enterprise, here, OED, existed;

Second, that the enterprise engaged in racketeering activity;

Third, that the enterprise engaged in or affected interstate or foreign commerce;

Fourth, that the defendant committed the violent crime alleged, which in Counts 6, 8, 10, 12, 14, 16, 18, and 20 is attempted murder and assault with a dangerous weapon; and

Fifth, that the defendant's general purpose in doing so was at least in part to gain entrance to the enterprise, or maintain or increase his position in the enterprise.

### A.  First, Second, and Third Elements

I have already defined for you in connection with Count 1 the first, second, and third elements regarding the enterprise, racketeering activity, and interstate commerce, and you should

53

apply those instructions here.  For Counts 6, 8, 10, 12, 14, 16, 18, and 20, the government is not required to prove beyond a reasonable doubt that the enterprise engaged in all of these forms of racketeering activity. To satisfy the second element of Counts 6, 8, 10, 12, 14, 16, 18, and 20, it is sufficient for the government to prove beyond a reasonable doubt that the enterprise engaged in only one form of the alleged forms of racketeering activity.

### B. Fourth Element: Assault with a Dangerous Weapon or Attempted Murder

The fourth element that the government must prove beyond a reasonable doubt with respect to Counts 6, 8, 10, 12, 14, 16, 18, and 20 is that the defendant you are considering committed an attempted murder or assault with a dangerous weapon, or aided and abetted such an attempted murder or assault.  For purposes of this element of these counts, you are to apply the aiding-and-abetting law of New York State, which I have already explained.

To satisfy this element, the government does not need to prove that a defendant committed both attempted murder and assault with a dangerous weapon, or aided and abetted the same; any one is sufficient.  Your verdict form will include a space for you to indicate whether the government has proven this element beyond a reasonable doubt as to attempted murder, assault with a dangerous weapon, both, or neither.

I previously instructed you on the content and elements of the laws that define attempted murder in the state of New York for purposes of Count 1.  You should apply those instructions here in determining whether each defendant committed attempted murder, or aided and abetted the same, with respect to this element of Counts 6, 8, 10, 12, 14, 16, 18, and 20.

I will now describe New York State law pertaining to assault with a dangerous weapon as it relates to this element of Counts 6, 8, 10, 12, 14, 16, 18, and 20.

Assault with a dangerous weapon under New York law for these purposes may be committed by assault in the second degree under New York law, which requires proof that someone suffered physical injury.  Assault in the second degree has two elements:

First, the defendant caused, or aided and abetted the causation of, physical injury to someone by means of a deadly weapon or dangerous instrument; and

Second, the defendant did so with the intent to cause physical injury to that person or another person.

Here, "physical injury" means impairment of physical condition or substantial pain.

"Deadly weapon" includes any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged.

"Dangerous instrument" means any instrument, article or substance, including a "vehicle" as that term is defined in this section, which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury.

### C.  Fifth Element: In Aid of Racketeering

The fifth element the government must prove beyond a reasonable doubt with respect to Counts 6, 8, 10, 12, 14, 16, 18, and 20, as to each defendant, is that the defendant's purpose in committing the relevant attempted murder or assault was to gain entrance to or to maintain or increase his position in the OED enterprise.  I have already explained this element to you in connection with Counts 2 and 4, and you are to apply those instructions here.

55

9. **Counts 7, 9, 11, 13, 15, 17, 19, 21, and 24: Firearms Use, Carrying, and Possession in Connection with of a Crime of Violence or Drug-Trafficking Crime**

Counts 7, 9, 11, 13, 15, 17, 19, and 21 each charge a defendant or defendants with knowingly using, carrying, and possession of a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the attempted murder and assault with a dangerous weapon in aid of racketeering charged in Counts 6, 8, 10, 12, 14, 16, 18, and 20, which firearm was brandished and discharged, or aiding and abetting the same, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii), and 2.

Specifically, Count 7 charges defendant BRIAN HERNANDEZ with using, carrying, and possessing a firearm during and in relation to, or in furtherance of, the shooting that occurred on or about January 24, 2020, as charged in Count 6, which firearm was brandished and discharged.

Count 6 charges defendant BRIAN HERNANDEZ with using, carrying, and possessing a firearm during and in relation to, or in furtherance of, the shooting that occurred in or about February 2020, as Charged in Count 8, which firearm was brandished and discharged.

Count 11 charges defendant BRIAN HERNANDEZ with using, carrying, and possession of a firearm during and in relation to, or in furtherance of, the shooting that occurred on or about May 15, 2020, as charged in Count 10, which firearm was brandished and discharged.

Count 13 charges defendants JOWENKY NUNEZ JR. and IYAURY RODRIGUEZ-ROSARIO with using, carrying, and possessing a firearm during and in relation to, or in furtherance of, the shooting that occurred on or about on or about June 26, 2020, as charged in Count 12, which firearm was brandished and discharged.

Count 15 charges defendants JOWENKY NUNEZ JR. and IYAURY RODRIGUEZ-ROSARIO using, carrying, and possessing a firearm during and in relation to, or in furtherance

of, the shooting that occurred on or about July 5, 2020, as charged in Count 14, which firearm was brandished and discharged.

Count 17 charges defendant JOWENKY NUNEZ JR. with using, carrying, and possessing a firearm during and in relation to, or in furtherance of, the shooting that occurred on or about July 18, 2020, as charged in Count 16, which firearm was brandished and discharged.

Count 19 charges defendant JOWENKY NUNEZ JR. with using, carrying, and possessing a firearm during and in relation to, or in furtherance of, the shooting that occurred on or about October 22, 2020, as charged in Count 18, which firearm was brandished and discharged.

Count 21 charges defendant JOWENKY NUNEZ JR. with using, carrying, and possessing a firearm during and in relation to, or in furtherance of, the shooting that occurred on or about March 4, 2022, as charged in Count 20, which firearm was brandished and discharged.

Each of these counts also charges each relevant defendant with aiding and abetting these crimes, and you should apply the instructions I previously gave you on aiding and abetting under federal law.

For each of these counts, with respect to the defendant you are considering, the government must prove beyond a reasonable doubt each of the following elements:

First, that with respect to Counts 7, 9, 11, 13, 15, 17, 19, and 21, the defendant committed a crime of violence for which he could be prosecuted in a court of the United States, and

Second, that the defendant knowingly used or carried a firearm during and in relation to the relevant crime of violence, or possessed a firearm in furtherance of that crime.

## A. Additional Instruction: Count 24

There is another count that I must discuss here as well. That is Count 24. Count 24 charges all three defendants with knowingly using, carrying, and possession of a firearm during and in relation to a drug-trafficking crime for which they may be prosecuted in a court of the United States, namely, the narcotics conspiracy charged in Count 23, which I will instruct you on later, and aiding and abetting the same, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2. I am including Count 24 here because it has the same general elements as Counts 7, 9, 11, 13, 15, 17, 19, and 21, except that Count 24 charges knowingly using, carrying, and possessing of a firearm during and in relation to a drug-trafficking crime, whereas Counts 7, 9, 11, 13, 15, 17, 19, and 21 charge the firearm offense during and in relation to a crime of violence.

Accordingly, the elements that the government must prove beyond a reasonable doubt with respect to Count 24 are:

First, that the defendant you are considering committed a drug-trafficking crime for which he could be prosecuted in a court of the United States; and

Second, that the defendant knowingly used or carried a firearm during and in relation to the relevant drug-trafficking crime, or possessed a firearm in furtherance of that crime.

## B. First Element: Crime of Violence *or* Drug-Trafficking Crime

The first element that the government must prove beyond a reasonable doubt is that the defendant you are considering committed a crime of violence or a drug-trafficking crime that can be charged in federal court. I will refer to those crimes as predicate offenses. You are instructed that the attempted murder and assault with a dangerous weapon in aid of racketeering charged in Counts 6, 8, 10, 12, 14, 16, 18, and 20, are each crimes of violence that can be charged in federal

court. Therefore, if you find that the government has proven the crime of violence charged in Counts 6, 8, 10, 12, 14, 16, 18, and/or 20 as to the defendant you are considering, this element will have been proven as to the corresponding firearms offense charged in Counts7, 9, 11, 13, 15, 17, 19, and/or 21.

With regard to Count 24, you are instructed that the narcotics conspiracy charged in Count 23 is a drug-trafficking crime that can be charged in federal court. Therefore, if you find that the government has proven the narcotics conspiracy charged in Count 23 as to the defendant you are considering, this element will have been proven with respect to Count 24.

### C.  Second Element: Use / Carry / Possess a Firearm

The second element that the government must prove beyond a reasonable doubt is that the defendant you are considering knowingly either used or carried a firearm during and in relation to the relevant predicate offense, or that he knowingly possessed a firearm in furtherance of that crime. I have already defined the terms "firearm," "use," "possess," and "carry" for you in connection with Counts 3 and 5, and you should apply those definitions here. You may also find this element satisfied if the defendant you are considering aided and abetted someone who used or carried a firearm during and in relation to the relevant predicate offense, or knowingly possessed a firearm in furtherance of that crime. So, each time I say "the defendant" in this section, you should consider that as including "the defendant, or someone he aided and abetted." I have previously explained to you the law of aiding and abetting, and you should apply those instructions here.

In order to prove that the defendant you are considering used the firearm, the government must prove beyond a reasonable doubt an active employment of the firearm by the defendant, during and in relation to the commission of the relevant predicate offense. This does not mean that the defendant must actually have fired or attempted to fire the weapon, although those acts

would constitute use of the weapon.  Brandishing, displaying, or even referring to the weapon so that others present knew that the defendant had the firearm all constitute "use" of the firearm. Moreover, selling or trading a firearm constitutes use of the firearm.  The mere possession of a firearm at or near the site of the crime without active employment as I just described it, is not, however, sufficient to constitute the use of the firearm.

"In relation to" means that the firearm must have had some purpose, role, or effect with respect to the relevant predicate offense.  This requirement is satisfied if the firearm facilitated, or had the potential to facilitate, the predicate offense.

In order to prove that the defendant you are considering carried the firearm, the government must prove that the defendant had the weapon within his control so that it was available in such a way that it furthered the commission of the predicate offense.  The defendant you are considering need not have held the firearm physically, that is, have had actual possession of it on his person.  If you find that the defendant had dominion and control over the place where it was located, and had the power to exercise control over the firearm, and that the firearm was immediately available to him in such a way that it furthered the commission of the predicate offense, you may find that the government has proved that the defendant carried the weapon.

In order to prove that a defendant possessed the firearm in furtherance of the predicate crime, the government must prove that the defendant physically possessed the firearm or had dominion and control over its location.  To possess a firearm in furtherance of a crime means that the firearm helped to advance or promote the commission of the crime.  The mere possession of the firearm at the scene of the crime is not sufficient.  The firearm must have played some part in furthering the crime.

Finally, the government must prove that the defendant you are considering used or carried the firearm knowingly. I have previously instructed you on what it means to act knowingly and that definition applies here as well. The defendant must have known that the object he was using or carrying was a firearm as that term is commonly used.

### D.  Special Interrogatory: Brandish and/or Discharge

If, but only if, you find the defendant you are considering guilty on Counts 7, 9, 11, 13, 15, 17, 19, and/or 21, either as a principal or as an aider or abettor, then you must indicate in the space provided on the verdict form for each of these counts whether you find that the government has also proven beyond a reasonable doubt that a firearm was (1) brandished and/or (2) discharged.

To "brandish" a firearm means to display all or part of the firearm, or to otherwise make known to another person that a firearm is present in order to intimidate that person, regardless of whether the firearm is directly visible to that other person. A defendant is guilty of aiding and abetting the brandishing of a firearm if he had advance knowledge that another participant in the crime of violence would display the firearm or make the presence of the firearm known for purposes of intimidation.

To "discharge" a firearm means to fire or shoot, whether intentionally or accidentally. A defendant is guilty of using, possessing, or carrying a firearm that was discharged if you find the government has proven beyond a reasonable doubt (1) that the defendant committed the firearms offense being considered or aided and abetted the commission of that offense, and (2) that the firearm in question was discharged.

If you have found the defendant you are considering guilty of the firearms offense you are considering, you must indicate on your verdict sheet whether you find that the firearm was brandished, discharged, or both.

61

This instruction does not apply to Count 24.

**10. Count 22: Attempted Murder and Assault with a Dangerous Weapon and Assault Resulting in Serious Bodily Injury in Aid of Racketeering**

Count 22 of the Indictment charges defendant JOWENKY NUNEZ JR. with attempted murder and assault with a dangerous weapon and assault resulting in serious bodily injury in aid of racketeering, based on a stabbing that occurred on or about February 28, 2023, in violation of Sections 1959(a)(3) and (a)(5), and 2, of Title 18 of the United States Code.  I have already stated the relevant provisions of Sections 1959(a)(3) and (a)(5).

With respect to this count, in order for you to find the charged defendant guilty, the government must prove beyond a reasonable doubt each of the following elements:

First, that the charged enterprise, here, OED, existed;

Second, that the enterprise engaged in racketeering activity;

Third, that the enterprise engaged in or affected interstate or foreign commerce;

Fourth, that the defendant committed the violent crime alleged, which in Count 22 is attempted murder, assault with a dangerous weapon, assault resulting in serious bodily injury, or aiding and abetting any of those crimes; and

Fifth, that the defendant's general purpose in committing any of those crimes was at least in part to maintain or increase his position in the enterprise.

With respect to the first, second, third, and fifth elements, I have already defined these terms for you and instructed you on each of these elements, and you should apply those instructions here.

With respect to the fourth element, I have already defined for you and instructed you on the crimes of attempted murder and assault with a dangerous weapon, and you should apply those instructions here with the following additional instructions: I previously defined for you the content and elements of the laws which define attempted murder in the state of New York.  I

63

instruct you to follow those definitions here to determine if the government has proven beyond a reasonable doubt, with respect to the fourth element of Count 22, that the defendant committed attempted murder, or aided and abetted the same.  I have also previously defined for you the content and elements of the law of assault in the second degree, and I instruct you to follow that definition here to determine if the government has proven beyond a reasonable doubt, with respect to the fourth element of Count 22, that the charged defendant committed assault with a dangerous weapon, or aided and abetted the same.  In addition, the assault with a dangerous weapon charged in Count 22 may also be committed by assault in the first degree, which I will instruct you on in a moment.

Count 22, however, also charges the defendant with committing assault resulting in serious bodily injury.  Such an assault under New York law for these purposes may be committed in different ways, by assault in the first or second degree.

As relevant here, assault in the first degree has the following elements:

First, the defendant caused, or aided and abetted the causation of, serious physical injury to someone by means of a deadly weapon or dangerous instrument; and

Second, the defendant did so with the intent to cause serious physical injury to that person or another person.

"Serious physical injury" is defined as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."  N.Y. Penal Law § 10.00(10).

As I have already instructed you:

"Deadly weapon" means any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged, or a switchblade knife, pilum ballistic knife, metal knuckle knife, dagger, billy, blackjack, plastic knuckles, or metal knuckles."

"Dangerous instrument" means any instrument, article or substance, including a "vehicle" as that term is defined in this section, which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury.

I have already instructed you on assault in the second degree, and you should apply those same instructions here with respect to assault with a dangerous weapon.  With respect to assault resulting in serious bodily injury, however, the government must prove beyond a reasonable doubt that such an assault was committed as follows:

First, the defendant you are considering caused, or aided and abetted the causation of, serious physical injury to someone; and

Second, the defendant did so with intent to cause such injury to that person or another person.

**11. Predicate Acts for Racketeering Conspiracy vs. Substantive Crimes in Aid of Racketeering**

Before I turn to the next count, I want to pause. I've just instructed you on, among other things, the racketeering conspiracy charged in Count 1, and the crimes of violence in aid of racketeering charged in Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, and 22.

Not every defendant is charged in each of Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, and 22. In determining your verdict for each of those counts themselves, you are being asked to consider only whether the government has proven beyond a reasonable doubt the guilt of the defendant or defendants specifically charged in each of those counts. In determining, however, whether the government has proven beyond a reasonable doubt that the defendant you are considering is guilty of the racketeering conspiracy charged in Count 1, you may consider, for that defendant, any of the acts of violence that are charged Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, and 22 as predicate racketeering acts, even if the defendant you are considering was not charged in the substantive count. In other words, in determining whether the defendant you are considering is guilty of Count 1, you may consider, among other things, that defendant's involvement in any act charged in Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, and 22, regardless of whether that defendant is charged in those counts.

66

**12. Count 23: Narcotics Conspiracy**

Count 23 of the Indictment charges all three defendants with participating in a conspiracy to violate the narcotics laws of the United States, in violation of Section 846 of Title 21 of the United States Code.  The Indictment charges that "from at least in or about 2018, up to and including at least in or about July 2022," the defendants and others known and unknown "intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States."  It was a part and object of the charged conspiracy that the defendants, and others, would and did distribute and possess with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).  The defendants are alleged to have conspired to distribute and possess with intent to distribute the following controlled substances: fentanyl, heroin, cocaine, and cocaine base (commonly known as crack or crack cocaine).

In order to find the defendant you are considering guilty of the narcotics conspiracy charged in Count 23, you must find that the government has proven beyond a reasonable doubt the following two elements:

First, that the conspiracy charged in Count 23 existed during the period in or about 2018 through July 2022; in other words, that there was, during this time, an agreement or understanding among two or more persons to unlawfully, intentionally, and knowingly distribute or possess with the intent to distribute a controlled substance; and

Second, that the defendant you are considering unlawfully, intentionally, and knowingly became a member of the conspiracy; in other words, that he knowingly associated himself with, and joined in, the conspiracy.

### A.  First Element: Existence of the Conspiracy

I have already instructed you on the general elements of conspiracy under federal law, and you should apply those instructions to this count.  As I have previously instructed you, a conspiracy to commit a crime is an entirely separate and different offense from the crime that is the objective of the conspiracy, or an attempt to commit that crime.

Indeed, you may find a defendant guilty of the crime of conspiracy to distribute controlled substances or to possess controlled substances with the intent to distribute them even if there was no actual distribution or possession with intent to distribute controlled substances. As I have previously explained, the essence of conspiracy under federal law is the agreement itself.

The government alleges that the goal (or object) of this conspiracy was to violate the drug laws by distributing controlled substances or possessing controlled substances with the intent to distribute them.  I instruct you that fentanyl, heroin, cocaine, and cocaine base are all controlled substances.  The government must prove beyond a reasonable doubt that the goal of the conspiracy was to distribute at least one of these specified controlled substances or to possess with the intent to distribute at least one of these specified controlled substances.  The government can, but need not, prove a conspiracy as to all of the specified controlled substances.  You must be unanimous, however, as to which goal or goals of the conspiracy has been proven beyond a reasonable doubt.  The purity of the controlled substance or controlled substances involved is not an element of the crime charged, so you need not be concerned with that.  I also instruct you that a defendant need not know the exact nature of the drug.  Also, in considering whether a conspiracy existed, you need not consider whether the government has proved that a particular quantity of a controlled substance was involved in the charged conspiracy.

In determining whether there was an unlawful agreement as alleged in Count 23, you may judge the proven acts and conduct of the alleged coconspirators that were taken to carry out the apparent criminal purpose. And as I previously instructed you regarding the law of conspiracy, the adage actions speak louder than words is applicable here. Often, the only evidence that is available is that of disconnected acts that, when taken together in connection with one another, show a conspiracy or an agreement to secure a particular result just as satisfactorily or conclusively as more direct proof. When people enter into a conspiracy to accomplish an unlawful end, they become agents or partners of one another in carrying out the conspiracy. In determining the factual issues before you, you may take into account against the defendant you are considering any acts done or statements made by any of the alleged coconspirators during the course of the conspiracy, even though such acts or statements were not made in the presence of that defendant or were made without his knowledge.

Of course, proof concerning the accomplishment of the object of a conspiracy may be the most persuasive evidence that the conspiracy itself existed, but it is not necessary and, as I have said, it is not necessary for the conspiracy actually to have succeeded for you to conclude that it existed. In deciding whether the conspiracy charged in Count 23 existed, you may consider all the evidence of the acts, conduct, and statements of the alleged conspirators and the reasonable inferences to be drawn from that evidence.

Now, the second part of the first element relates to the object or goal of the conspiracy. According to the Indictment, the goal of the conspiracy alleged in Count 23 was to violate the narcotics laws of the United States by distributing controlled substances or possessing controlled substances with the intent to distribute them.

Let me define the terms "distribute," and "possession with intent to distribute."

69

"Distribute" means the actual, constructive, or attempted transfer of a controlled substance. "To distribute" simply means to deliver or to hand something over to another person or to cause something to be delivered, passed on, or handed over to another person. Distribution does not require a sale, but a sale is one of the ways that a controlled substances can be distributed.

Now I will define "possession with intent to distribute." The term "possession" here may differ from the everyday usage of the term. It can be either actual or constructive. Actual possession is what most of us think of as possession, that is, having physical custody or control of an object. By way of example, I possess this pen. A person, however, need not have actual physical possession, that is, physical custody of an object, in order to be in legal possession of it. If a person has the ability to exercise substantial control over the object, even if he does not have the object in his physical custody and that person has the intent to exercise such control, then the person is in possession of that article. That would be called constructive possession. For example, if your friend borrows your car, you can direct him or her to deliver the car to the garage. In that instance, although you do not have actual possession of the car, you have constructive possession because you have the ability to direct the actions of your friend, who actually possesses the car. Control over an object may be demonstrated by the existence of a working relationship between one person having the power or ability to control the item, and another person who has actual physical custody. The person having control "possesses" the controlled substance because he has an effective working relationship with the people who have actual physical custody of the controlled substance and because he can direct the movement or transfer or disposition of the controlled substance. In addition, an individual may have possession of an item that is not found on his person, because that individual has a relationship to

the location where the item is maintained.  The law recognizes that more than one person can possess an object at the same time.  If more than one person has possession of the object, then the object is jointly possessed.

A person possesses "with intent to distribute" a controlled substance if the person has possession of a controlled substance, either actual or constructive, and intends to "distribute" it to another person or persons.  As I explained, distribute simply means to transfer the item to another person.

Often, it is possible to determine whether someone has an intent to distribute from the quantity of drugs that were possessed, although the possession of a large quantity of narcotics does not necessarily mean that an individual intended to distribute them.  On the other hand, an individual may have intended to distribute a controlled substance even if he did not possess a large quantity of it.  Remember, the ultimate success of the conspiracy or the actual commission of the crime that is the object of the conspiracy, that is, the distribution or the possession with intent to distribute the narcotics is not required.  The offense alleged here is simply a conspiracy or an agreement to distribute controlled substances or a conspiracy or agreement to possess controlled substances with the intent to distribute them.

### B.  Second Element: Membership in the Conspiracy

If you conclude that the government has established that the charged conspiracy existed, then you must consider whether the government has proven, beyond a reasonable doubt, with respect to the defendant you are considering, that the defendant unlawfully, knowingly, and intentionally became a member of the conspiracy for the purpose of furthering the conspiracy's unlawful goal or goals.  I have already instructed you on the definitions of unlawfully, knowingly, and intentionally, and on what constitutes membership in a conspiracy under federal law, and you should apply those same instructions here.

71

### C.  Special Interrogatories: Drug Type and Quantity

If, but only if, you find that the defendant you are considering is guilty of Count 23, then you must determine what drug or drugs, and what quantity of drug or drugs, the defendant conspired to distribute or possess with intent to distribute.

#### i.     Drug Type

You must be unanimous as to the type of controlled substance or controlled substances that you find each defendant conspired to distribute or to possess with intent to distribute.  You must indicate on the verdict sheet whether you have found that a goal of the conspiracy was to distribute, or possess with intent to distribute, mixtures containing detectable amounts of some or all of the following substances: fentanyl, heroin, cocaine, or cocaine base.

#### ii.    Drug Quantity

If you find that a goal of the conspiracy was to distribute or possess with intent to distribute any or all of these substances, then you must determine the quantity of each of the controlled substance for which you find the defendant you are considering is responsible.

In determining quantity, you should include whatever quantity of the controlled substance that was involved in a defendant's own actions as well as the actions of co-conspirators taken as part of the conspiracy.  That is, you should include whatever quantity of fentanyl, heroin, cocaine, and/or cocaine base was involved in any act or acts in which a defendant personally and directly participated.  If you find that the defendant personally or directly participated in a jointly undertaken drug transaction, he is responsible for the full quantity of the drugs involved in that transaction.  In addition, the defendant is also responsible for any quantities of narcotics distributed by coconspirators, as long as the quantities were known or reasonably foreseeable to the defendant, and were within the scope of the criminal activity that the defendant jointly

undertook. Reasonably foreseeable means that the defendant could have reasonably anticipated the type and quantity of drugs involved in the conspiracy.

You need not determine the precise quantity of each controlled substance. Instead, if you reach the question of quantity, indicate on the verdict form whether the government has established beyond a reasonable doubt the following:

If you decide that a goal of the conspiracy was to distribute or possess with intent to distribute mixtures and substances containing fentanyl, then you must indicate on the verdict sheet whether you find each defendant was responsible for: 400 grams or more; 40 grams or more but less than 400 grams; or less than 40 grams of mixtures and substances containing a detectable amount of fentanyl.

If you decide that a goal of the conspiracy was to distribute or possess with intent to distribute mixtures and substances containing heroin, then you must indicate on the verdict sheet whether you find each defendant was responsible for: one kilogram or more; 100 grams or more but less than one kilogram; or less than 100 grams of mixtures and substances containing a detectable amount of heroin.

If you decide that a goal of the conspiracy was to distribute or possess with intent to distribute mixtures and substances containing cocaine, then you must indicate on the verdict sheet whether you find each defendant was responsible for: five kilograms or more; 500 grams or more but less than five kilograms; or less than 500 grams of mixtures and substances containing a detectable amount of cocaine.

If you decide that a goal of the conspiracy was to distribute or possess with intent to distribute mixtures and substances containing cocaine base, then you must indicate on the verdict sheet whether you find each defendant was responsible for: 280 grams or more; 28 grams or

more but less than 280 grams; or less than 28 grams of mixtures and substances containing a detectable amount of cocaine base.

Your findings regarding quantity must be unanimous. If you unanimously agree that the government proved, beyond a reasonable doubt, that the conspiracy involved some quantity of a controlled substance, but you do not unanimously agree on the quantity involved, enter on the verdict sheet the greatest quantity as to which there is unanimous agreement.

\*       \*       \*

I have already instructed you on Count 24, which charges the defendants with using, carrying, or possessing a firearm in furtherance of the narcotics trafficking conspiracy charged in Count 23 that I just discussed. So I will now move on to the next and final count, Count 25.

\*       \*       \*

**13. Count 25: Interstate Transport or Receipt of Firearms**

Finally, Count 25 charges defendants JOWENKY NUNEZ JR. and IYAURY RODRIGUEZ-ROSARIO with willfully and knowingly transporting into or receiving in the State where they reside firearms purchased or otherwise obtained outside that State, and aiding and abetting the same, without being licensed importers, manufacturers, dealers, or collectors of firearms, in violation of Title 18, United States Code, Sections 922(a)(3) and 2.

To prove this offense, the government must establish the following three elements beyond a reasonable doubt, with respect to each defendant charged in Count 25:

First, that the defendant was not a licensed importer, licensed manufacturer, licensed dealer, or licensed collector of firearms;

Second, that the defendant transported or received into the state in which he resided a firearm purchased or otherwise obtained outside that state.

Third, the defendant acted willfully.

**A. Definitions**

I already instructed you as to the definition of "firearm" in connection with Counts 3 and 5, and Counts 7, 9, 11, 13, 15, 17, 19, and 21. You should apply that definition here. A gun is a firearm, but you should also be aware that the frame or receiver of a gun is also a firearm.

Let me now define the other relevant terms for you.

A person is an "importer" when he is "engaged in the business of importing or bringing firearms or ammunition into the United States for purposes of sale or distribution."

A person is a "manufacturer" when he is "engaged in the business of manufacturing firearms or ammunition for purposes of sale or distribution."

A person is a "dealer" when he is "engaged in the business of selling firearms at wholesale or retail."

A person is a "collector" when he "acquires, holds, or disposes of firearms as curios or relics."

The terms "licensed importer," "licensed manufacturer," "licensed dealer," and "licensed collector" mean any such persons who are licensed under the provisions of the Gun Control Act.

### B.  First Element – Not Licensed

The first element that the government must prove beyond a reasonable doubt with respect to each charged defendant is that the defendant was not a licensed importer, manufacturer, dealer, or collector.

In order to be a licensed dealer, a person must file an application with and receive a license from the United States Secretary of the Treasury.

### C.  Second Element – Transportation Into or Receipt in State of Residence

The second element that the government must prove beyond a reasonable doubt with respect to each charged defendant is that the firearm was obtained outside of the state of residence of the transporter or receiver and then transported into or received in that state.

In order to satisfy this element, the government must prove that the state in which the firearm was purchased or otherwise obtained was not the defendant's state of residence and that the state into which the firearm was transported into or received in was the defendant's state of residence.

The defendant does not have to himself purchase the firearm out-of-state, but it is enough to prove only that the defendant received or accepted the gun in his state of residence.  The government will have been found to have satisfied this element if the defendant has caused an agent, employee, or other associate to bring the gun into the defendant's state of residence.  A defendant who uses another person to purchase the guns for him out-of-state through the use of false statements has "otherwise obtained" firearms under the statute.

Note that Count 25 also charges defendants JOWENKY NUNEZ JR. and IYAURY RODRIGUEZ-ROSARIO under an aiding and abetting theory of liability, in violation of Title 18, United States Code, Section 2.  That is, each of these defendants is charged not only as a principal who committed the crime of interstate transport or receipt of firearms without a license, but also as an aider and abettor.  I have previously instructed you on the concept of aiding and abetting liability and you should apply those same instructions here.

### D.  Third Element – Willfulness

The third element that the government must prove beyond a reasonable doubt with respect to each charged defendant is that the defendant acted willfully.

I have previously instructed you on the definition of willfully, and that definition applies here.

*       *       *

I am now finished instructing you on the elements of the specific Counts with which the defendants are charged.  I now have a few more substantive instructions, and then will move on to a few procedural instructions concerning your deliberations.

*       *       *

77

**14. Venue**

In addition to the elements I have described for you, you must decide with respect to each count of the Indictment whether venue is proper in this District—that is, the Southern District of New York. The Southern District of New York includes, among other places, all of Manhattan and the Bronx, and Westchester County, including Yonkers.

In this regard, with respect to Count 1 (racketeering conspiracy) and Count 23 (narcotics conspiracy), the government need not prove that the entirety of each charged conspiracy was committed in the Southern District of New York, or that a defendant was present here. It is sufficient to satisfy the venue requirement if any act in furtherance of the crime charged occurred within the Southern District of New York.

With respect to Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, and 22, the murder, attempted murder, and assault in aid of racketeering charges, because the existence of the racketeering conspiracy in Count 1 is an element of the crimes charged in Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, and 22, if you find venue is proper with respect to Count 1, then you must find that venue is proper with respect to each of those counts as well. In other words, if you find venue is proper for the racketeering conspiracy charged in Count 1, then you must also find that venue is proper for Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, and 22.

You may also find venue for Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, and 22 if you find that any act in furtherance of the crime you are considering occurred within the Southern District of New York, and it was reasonably foreseeable to the defendant you are considering that the act would take place in the Southern District of New York.

With respect to Counts 3, 5, 7, 9, 11, 13, 15, 17, 19, and 21—which each charge some form of use, carrying, or possession of a firearm in furtherance of the crimes of violence charged in Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, and 20—venue for those firearms offenses is proper in

any district where any act in furtherance of the underlying crime of violence was committed or in any district where the substantive firearms offense was committed. This means that if you find that venue for the relevant crime of violence exists in the Southern District of New York, then you may find venue for the accompanying firearms offense, regardless of where the firearms were used, carried, or possessed.

With respect to Count 24, which charges using, carrying, and possession of a firearm in furtherance of the drug-trafficking conspiracy charged in Count 23, venue for that firearm offense is proper in any district where any act in furtherance of the underlying drug-trafficking crime was committed or in any district where the substantive firearms offense was committed. This means that if you find that venue for the relevant drug-trafficking crime exists in the Southern District of New York, then you may find venue for the accompanying firearms offense, regardless of where the firearm was used, carried, or possessed

With respect to Count 25, interstate transport or receipt of a firearm, venue is proper to the extent that any act in furtherance of the offense occurred within the Southern District of New York.

I should note that on this issue—and this alone—the United States need not prove venue beyond a reasonable doubt, but only by a "preponderance of the evidence," which means more likely than not. Thus, for example, the United States has satisfied its venue obligation if you conclude that it is more likely than not that any act in furtherance of the crimes charged occurred in the Southern District of New York. By contrast, if you find that the government failed to prove venue by a preponderance of the evidence with regard to any count, then you must acquit the defendant you are considering of that count.

**15. Variance in Dates**

As I have described the Indictment, you may have noticed that it refers to various dates or times.  It does not matter if the evidence you heard at trial indicates that a particular act occurred on a different date, and it is not essential that the government prove that the charged offenses started and ended on any specific dates.  The law requires only a substantial similarity between the dates alleged in the Indictment and the dates established by the evidence.

**IV.     FINAL INSTRUCTIONS**

**1.  Right to See Exhibits and Hear Testimony; Communications with Court**

You are about to begin your deliberations.

We will send into the jury room all of the exhibits except for the devices that were admitted into evidence.  The devices will be made available on request, and all of the other exhibits will be loaded on the computer that is available to you in the jury room.  If you have any difficulty operating the computer or finding what you want to see, please send me a note and I will send someone in to help.

If you want any further explanation of the law or if you want to hear any testimony read back, you may request that.  If you ask for any testimony to be re-read, please be as specific as possible so that we can identify exactly what you want read and not waste time reading testimony that you do not want to hear.  If there is any doubt or question about the meaning of any part of the instructions that I have given you, you should not hesitate to send me a note asking for clarification or for further explanation.

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching on this case.  There is only one exception to this rule.  If it becomes necessary during your deliberations to communicate with me, you should send me a written note signed by your foreperson, by giving it to the Marshal, who will be available outside the jury room throughout your deliberations.  No member of the jury should ever attempt to communicate with me except by a signed writing, and I will never communicate with a member of the jury on any subject touching on the merits of the case other than in writing or orally here in open court.  If you send any notes to the Court, do not disclose anything about your deliberations.  Specifically, do not disclose to anyone — not even to me — how the jury

stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

### 2.  Notes

Some of you have taken notes throughout this trial.  I want to emphasize to you that notes are simply an aid to memory.  Your notes may not be given any greater weight or influence in the determination of the case than the recollections of other jurors.  Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, because it is the court record that the jury must rely on when making a determination of the facts and rendering a verdict.

### 3.  Duty to Deliberate / Unanimous Verdict

You will now retire to decide your verdict.  As I have already explained, for the government to prevail, the government must prove each essential element of the charge beyond a reasonable doubt.  If the government carries its burden with respect to a particular charge and a particular defendant, you must find that defendant guilty on that charge.  Otherwise, you must find the defendant not guilty on that charge.

Your verdict on each charge must be unanimous.  Each juror is entitled to his or her opinion, but you are also required to exchange views with your fellow jurors.  That is the very essence of jury deliberation.  If you have a point of view and, after discussing it with other jurors, it appears that your own judgment is open to question, then of course you should not hesitate to yield your original point of view if you are convinced that the other view is one that satisfies your judgment and conscience.  But do not give up a point of view that you conscientiously believe simply because you are outnumbered.  You should vote with the others

only if you are convinced on the evidence, the facts, and the law that it is the correct way to decide the case.

After any breaks, or when you arrive in the morning if your deliberations last more than one day, do not begin to discuss the case until all jurors are present.

### 4.  Selecting a Foreperson and the Foreperson's Duties

The first thing you should do when you retire to deliberate is to select one of you to act as your foreperson.  You are free to select any of your members as your foreperson.  The foreperson does not have any more authority than any other juror, and his or her vote or opinion does not count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the Court.  He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the Marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### 5.  Verdict Form and Return of Verdict

Once you have reached your verdict, you must record it on the verdict form that I have prepared for you.  The verdict form does not represent either evidence or instructions on the law.

The foreperson should fill in the Verdict Sheet, date it, and sign it.  The foreperson should then give a note to the Marshal outside your door stating that you have reached a verdict. Do not specify what the verdict is in the note.  The foreperson should keep the Verdict Sheet until I ask for it.  You must all be in agreement with the verdict that is announced in Court.

### 6.  Oath

You are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy, solely upon the evidence in the case and the applicable law.

I am sure that if you follow your oath, listen to the views of your fellow jurors, and apply your own common sense, you will reach a fair verdict here. Remember that your verdict must be rendered without fear, without favor, and without prejudice or sympathy.

## 7. Alternatives

Before you retire into the jury room I must inform you that the law provides for a jury of twelve people in this case. Therefore, four people—jurors 15, 16, 17, and 18—are alternates. Those jurors will be allowed to leave the courthouse during deliberations, but they are not yet excused as jurors in this case.

[To the excused jurors]

In the event that one of the non-alternate jurors can no longer deliberate, you may be recalled to continue their service. For now, though, you may leave. You have been very attentive and very patient. I am sorry that you may miss the experience of deliberating with the jury, but the law provides only for a jury of twelve people in this case. Before the rest of the jury retires to the jury room, if you have any clothing or objects there you are asked to pick them up and to withdraw before any deliberations start.

Please do not discuss the case with anyone over the next few days. If you would like to be advised of the outcome of the trial, please make sure that Mr. Hampton has a phone number at which you can be reached.

(Alternates released.)

Members of the jury, you may now retire to deliberate on your verdict.

(Marshal sworn.)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **INDICTMENT** |
| v. | 22 Cr. 293 (JPO) |
| JOWENKY NUNEZ, JR.,<br> a/k/a "Juju,"<br>BRIAN HERNANDEZ,<br> a/k/a "Malikai,"<br>IYAURY RODRIGUEZ-ROSARIO,<br> a/k/a "Bricha,"<br>                    Defendants. | |

## COUNT ONE
### (Racketeering Conspiracy)

The Grand Jury charges:

### THE ENTERPRISE

1.        From at least in or about 2018, up through and including at least in or about August 2023, JOWENKY NUNEZ, JR., a/k/a "Juju," BRIAN HERNANDEZ, a/k/a "Malikai," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, and others known and unknown, were members and associates of Own Every Dollar, a/k/a "OED," a criminal organization whose members and associates engaged in, among other activities, acts involving murder, assault, unlawful interstate transport of firearms, and the distribution of controlled substances.  Own Every Dollar operated principally in and around the Washington Heights area of Manhattan, but also in the Bronx and Queens, New York.

2.        Own Every Dollar, including its leadership, membership, and associates, constituted an "enterprise" (hereinafter the "OED Enterprise"), as defined by Title 18, United States Code, Sections 1961(4) and 1959(b)(2), that is, a group of individuals associated in fact, although not a legal entity.  The OED Enterprise constituted an ongoing organization whose

members functioned as a continuing unit for a common purpose of achieving the objectives of the OED Enterprise. At all times relevant to this Indictment, the OED Enterprise was engaged in, and its activities affected, interstate and foreign commerce. JOWENKY NUNEZ, JR., a/k/a "Juju," BRIAN HERNANDEZ, a/k/a "Malikai," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, participated in the OED Enterprise and participated in unlawful and other activity in furtherance of the conduct of the OED Enterprise's affairs.

3.      Members and associates of the OED Enterprise engaged in a series of violent disputes with rivals of the OED Enterprise, including those within the OED Enterprise who they deemed disloyal to the OED Enterprise. During these disputes, members and associates of the OED Enterprise committed multiple murders, shootings, and assaults against their rivals and against fellow members of the OED Enterprise.

4.      Members and associates of OED also sold fentanyl, heroin, cocaine, and cocaine base (crack cocaine), in and around New York, New York, and the Bronx, New York.

5.      Members and associates of OED committed and agreed, attempted, and threatened to commit acts of violence to protect and expand their narcotics business, to protect fellow members and associates of the OED Enterprise, to otherwise promote the standing and reputation of OED amongst rival gangs, and to promote the standing and reputation of members of OED. These acts of violence included acts involving murder and assault, intended to protect the OED Enterprise's narcotics business, and to retaliate against members of rival gangs who had encroached on the OED Enterprise's narcotics business.

## PURPOSES OF THE ENTERPRISE

6.      The purposes of the OED Enterprise included the following:

a.      Preserving and protecting the power, territory, and profits of the OED Enterprise and its members and associates through acts involving murder, other acts of violence, and threats of violence.

b.      Promoting and enhancing the OED Enterprise and the activities of its members and associates.

c.      Keeping victims and potential victims in fear of the OED Enterprise and its members and associates through acts and threats of violence.

d.      Providing assistance to members and associates who committed crimes for and on behalf of the OED Enterprise.

e.      Enriching the members and associates of the OED Enterprise through, among other things, the distribution and sale of narcotics, including fentanyl, heroin, cocaine, and cocaine base (crack cocaine).

f.      Protecting the OED Enterprise and its members and associates from detection and prosecution by law enforcement authorities through, among other things, acts of intimidation and violence against potential witnesses to crimes committed by members and associates of the OED Enterprise.

## MEANS AND METHODS OF THE ENTERPRISE

7.      Among the means and methods employed by the members and associates in conducting and participating in the conduct of the affairs of the OED Enterprise were the following:

a.      Members and associates of the OED Enterprise committed, conspired, attempted, and threatened to commit acts of violence, including acts involving murder, to protect and expand the OED Enterprise's criminal operations, and to attack and retaliate against rival gang members.

b.      Members and associates of the OED Enterprise used threats of violence and physical violence against other members and associates of the OED Enterprise to enforce and maintain discipline within the OED Enterprise.

c.      Members and associates of the OED Enterprise committed, conspired, attempted, and threatened to commit acts of violence, including acts involving murder against rival gang members and other individuals.

d.      Members and associates of the OED Enterprise promoted and celebrated, including in music, on YouTube, and on social media, the criminal conduct of OED, namely narcotics distribution, acts involving violence, and the use of firearms.

e.      Members and associates of the OED Enterprise obtained, possessed, and used firearms, including in connection with their narcotics trafficking activities and acts of violence.

f.      Members and associates of the OED Enterprise sold narcotics, including fentanyl, heroin, cocaine, and cocaine base (crack cocaine).

## THE RACKETEERING CONSPIRACY

8.      From at least in or about 2018, up to and including in or about August 2023, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," BRIAN HERNANDEZ, a/k/a "Malikai," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, and others known and unknown, being persons employed by and associated with the

racketeering enterprise described in Paragraphs One through Seven of this Indictment, namely, Own Every Dollar, an enterprise, which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the OED Enterprise through a pattern of racketeering activity as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of:

a.    multiple acts involving murder, chargeable under the following provisions of state law: New York Penal Law Sections 125.25 (murder), 110.00 (attempt), 105.15 (conspiracy), and 20.00 (aiding and abetting);

b.    multiple offenses involving the distribution of controlled substances, including, fentanyl, heroin, cocaine, and cocaine base, in violation of laws of the United States, namely Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), 841(b)(1)(D), and 846, and Title 18, United States Code, Section 2.

9.    It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the OED Enterprise.

## NOTICE OF SPECIAL FACTORS
### (Murder)

10.    On or about August 31, 2018, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," the defendant, and others known and unknown, knowingly murdered Nicholas Vargas in the vicinity of 5655 Broadway in the Bronx, New York, in violation of New York Penal Law, Sections 125.25 and 20.00, in that, with intent to cause the death of another person, NUNEZ, JR. caused the death of Vargas, and aided and abetted the same.

11.     On or about April 14, 2019, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," the defendant, and others known and unknown, knowingly murdered and aided and abetted the murder of Hector Cruz in the vicinity of 500 West 135th Street in the New York, New York, in violation of New York Penal Law, Sections 125.25 and 20.00, in that, with intent to cause the death of another person, NUNEZ, JR. caused the death of Cruz, and aided and abetted the same.

12.     On or about July 2, 2020, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," BRIAN HERNANDEZ, a/k/a "Malikai," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, and others known and unknown, knowingly murdered and aided and abetted the murder of Richard Dominguez, a/k/a "Chikin," in the vicinity of 1475 Sedgewick Avenue in the Bronx, New York, in violation of New York Penal Law, Sections 125.25 and 20.00, in that, with intent to cause the death of another person, NUNEZ, JR., HERNANDEZ, and RODRIGUEZ-ROSARIO caused the death of Dominguez, and aided and abetted the same.

13.     On or about July 2, 2020, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," BRIAN HERNANDEZ, a/k/a "Malikai," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, and others known and unknown, knowingly murdered and aided and abetted the murder of Israel Cabrera, a/k/a "Gotti," in the vicinity of 1475 Sedgewick Avenue in the Bronx, New York, in violation of New York Penal Law, Sections 125.25 and 20.00, in that, with intent to cause the death of another person, NUNEZ, JR., HERNANDEZ, and RODRIGUEZ-ROSARIO caused the death of Cabrera, and aided and abetted the same.

## NOTICE OF SPECIAL FACTORS
### (Narcotics Conspiracy)

14.    From at least in or about 2018, up to and including at least in or about July 2022, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," BRIAN HERNANDEZ, a/k/a "Malikai," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

15.    It was a part and an object of the conspiracy, that JOWENKY NUNEZ, JR., a/k/a "Juju," BRIAN HERNANDEZ, a/k/a "Malikai," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

16.    The controlled substances that JOWENKY NUNEZ, JR., a/k/a "Juju," BRIAN HERNANDEZ, a/k/a "Malikai," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, conspired to distribute and possess with intent to distribute were: (i) 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A); (ii) one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A); and (iii) 280 grams and more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Section 841(b)(1)(A), all in violation of Title 21, United States Code, Section 846.

(Title 18, United States Code, Section 1962(d).)

## COUNT TWO
### (Murder in Aid of Racketeering)

The Grand Jury further charges:

17.     At all times relevant to this Indictment, OED, as described in Paragraphs One through Seven of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce.  The OED Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

18.     At all times relevant to this Indictment, OED, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving murder, in violation of New York Penal Law, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

19.     On or about July 2, 2020, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," BRIAN HERNANDEZ, a/k/a "Malikai," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from OED, and for the purpose of gaining entrance to and maintaining and increasing position in OED, an enterprise engaged in racketeering activity, as described above, knowingly murdered and aided and abetted the murder of Richard Dominguez, a/k/a "Chikin," in the vicinity of 1475 Sedgwick Avenue in the Bronx, New York, in violation of New York Penal Law, Sections 125.25 and 20.00, in that, with intent to cause the death of another person, NUNEZ,

JR., HERNANDEZ, and RODRIGUEZ-ROSARIO caused the death of Dominguez, and aided and abetted the same.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

## COUNT THREE
### (Murder Through the Use of a Firearm)

The Grand Jury further charges:

20.    On or about July 2, 2020, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," BRIAN HERNANDEZ, a/k/a "Malikai," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, and others known and unknown, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the murder in aid of racketeering charged in Count Two of this Indictment, willfully and knowingly did use and carry a firearm, and in furtherance of such crime, did possess a firearm, and in the course of that crime did cause the death of a person through the use of a firearm, which killing is murder as defined in Title 18, United States Code, Section 1111(a), and did aid and abet the same, to wit, NUNEZ, JR., HERNANDEZ, and RODRIGUEZ-ROSARIO shot and killed Richard Dominguez, a/k/a "Chikin," and aided and abetted the shooting and killing of Dominguez in the vicinity of 1475 Sedgewick Avenue in the Bronx, New York.

(Title 18, United States Code, Sections 924(j) and 2.)

## COUNT FOUR
### (Murder in Aid of Racketeering)

The Grand Jury further charges:

21.    At all times relevant to this Indictment, OED, as described in Paragraphs One through Seven of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that

term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce.  The OED Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

22.     At all times relevant to this Indictment, OED, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving murder, in violation of New York Penal Law, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

23.     On or about July 2, 2020, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," BRIAN HERNANDEZ, a/k/a "Malikai," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from OED, and for the purpose of gaining entrance to and maintaining and increasing position in OED, an enterprise engaged in racketeering activity, as described above, knowingly murdered and aided and abetted the murder of Israel Cabrera, a/k/a "Gotti," in the vicinity of 1475 Sedgewick Avenue in the Bronx, New York, in violation of New York Penal Law, Sections 125.25 and 20.00, in that, with intent to cause the death of another person, NUNEZ, JR., HERNANDEZ, and RODRIGUEZ-ROSARIO caused the death of Cabrera, and aided and abetted the same.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

10

## COUNT FIVE
### (Murder Through the Use of a Firearm)

The Grand Jury further charges:

24.     On or about July 2, 2020, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," BRIAN HERNANDEZ, a/k/a "Malikai," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, and others known and unknown, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the murder in aid of racketeering charged in Count Four of this Indictment, willfully and knowingly did use and carry a firearm, and in furtherance of such crime, did possess a firearm, and in the course of that crime did cause the death of a person through the use of a firearm, which killing is murder as defined in Title 18, United States Code, Section 1111(a), and did aid and abet the same, to wit, NUNEZ, JR., HERNANDEZ, and RODRIGUEZ-ROSARIO shot and killed Israel Cabrera, a/k/a "Gotti," and aided and abetted the shooting and killing of Cabrera in the vicinity of 1475 Sedgewick Avenue in the Bronx, New York.

(Title 18, United States Code, Sections 924(j) and 2.)

## COUNT SIX
### (Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering)

The Grand Jury further charges:

25.     At all times relevant to this Indictment, OED, as described in Paragraphs One through Seven of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce.  The OED Enterprise constituted an ongoing organization whose members functioned

as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

26.      At all times relevant to this Indictment, OED, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving murder, in violation of New York Penal Law, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

27.      On or about January 24, 2020, in the Southern District of New York and elsewhere, BRIAN HERNANDEZ, a/k/a "Malikai," the defendant, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from OED, and for the purpose of gaining entrance to and maintaining and increasing position in OED, an enterprise engaged in racketeering activity, as described above, knowingly attempted to murder an individual and assaulted that individual with a dangerous weapon, and aided and abetted the same, to wit, HERNANDEZ and others known and unknown, shot at a rival gang member in the vicinity of 136th Street between Amsterdam and Broadway in New York, New York, in violation of New York Penal Law, Sections 125.25, 120.14, 110.00, and 20.00.

(Title 18, United States Code, Sections 1959(a)(3), (a)(5), and 2.)

## COUNT SEVEN
### (Discharge of a Firearm in Connection with a Crime of Violence)

The Grand Jury further charges:

28.      On or about January 24, 2020, in the Southern District of New York and elsewhere, BRIAN HERNANDEZ, a/k/a "Malikai," the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the attempted murder and assault with a dangerous weapon in aid of racketeering charged in Count Six of this

Indictment, knowingly did use and carry a firearm and, in furtherance of such crimes, did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii), and 2.)

## COUNT EIGHT
### (Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering)

The Grand Jury further charges:

29.     At all times relevant to this Indictment, OED, as described in Paragraphs One through Seven of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce.  The OED Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

30.     At all times relevant to this Indictment, OED, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving murder, in violation of New York Penal Law, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

31.     In or about February 2020, in the Southern District of New York and elsewhere, BRIAN HERNANDEZ, a/k/a "Malikai," the defendant, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from OED, and for the purpose of gaining entrance to and maintaining and increasing position in OED, an enterprise engaged in racketeering activity, as described above,

knowingly attempted to murder an individual and assaulted that individual with a dangerous weapon, and aided and abetted the same, to wit, HERNANDEZ and others known and unknown, shot at rival gang members in the vicinity of 136th Street, in New York, New York, in violation of New York Penal Law, Sections 125.25, 120.14, 110.00, and 20.00.

(Title 18, United States Code, Sections 1959(a)(3), (a)(5), and 2.)

## COUNT NINE
### (Discharge of a Firearm in Connection with a Crime of Violence)

The Grand Jury further charges:

32.     In or about February 2020, in the Southern District of New York and elsewhere, BRIAN HERNANDEZ, a/k/a "Malikai," the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the attempted murder and assault with a dangerous weapon in aid of racketeering charged in Count Eight of this Indictment, knowingly did use and carry a firearm and, in furtherance of such crimes, did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii), and 2.)

## COUNT TEN
### (Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering)

The Grand Jury further charges:

33.     At all times relevant to this Indictment, OED, as described in Paragraphs One through Seven of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce. The OED Enterprise constituted an ongoing organization whose members functioned

14

as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

34.     At all times relevant to this Indictment, OED, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving murder, in violation of New York Penal Law, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

35.     On or about May 15, 2020, in the Southern District of New York and elsewhere, BRIAN HERNANDEZ, a/k/a "Malikai," the defendant, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from OED, and for the purpose of gaining entrance to and maintaining and increasing position in OED, an enterprise engaged in racketeering activity, as described above, knowingly attempted to murder an individual and assaulted that individual with a dangerous weapon, and aided and abetted the same, to wit, HERNANDEZ shot a rival drug dealer in the leg in the vicinity of 188th Street between Audubon and St. Nicholas Avenues in New York, New York, in violation of New York Penal Law, Sections 125.25, 120.05, 110.00, and 20.00.

(Title 18, United States Code, Sections 1959(a)(3), (a)(5), and 2.)

## COUNT ELEVEN
### (Discharge of a Firearm in Connection with a Crime of Violence)

The Grand Jury further charges:

36.     On or about May 15, 2020, in the Southern District of New York and elsewhere, BRIAN HERNANDEZ, a/k/a "Malikai," the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the attempted murder and assault with a dangerous weapon in aid of racketeering charged in Count Ten of this Indictment, knowingly did use and carry a firearm and, in furtherance of such crimes, did possess

15

a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii), and 2.)

## COUNT TWELVE
### (Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering)

The Grand Jury further charges:

37.    At all times relevant to this Indictment, OED, as described in Paragraphs One through Seven of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce. The OED Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

38.    At all times relevant to this Indictment, OED, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving murder, in violation of New York Penal Law, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

39.    On or about June 26, 2020, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from OED, and for the purpose of gaining entrance to and maintaining and increasing position in OED, an enterprise engaged in racketeering activity, as described above, knowingly attempted to murder an individual

16

and assaulted that individual with a dangerous weapon, and aided and abetted the same, to wit, in

the vicinity of West 188th Street and Audubon Avenue in New York, New York, NUNEZ, JR. and

RODRIGUEZ-ROSARIO shot at a group of rival drug dealers, in violation of New York Penal

Law, Sections 125.25, 120.14, 110.00, and 20.00.

(Title 18, United States Code, Sections 1959(a)(3), (a)(5), and 2.)

## COUNT THIRTEEN
### (Discharge of a Firearm in Connection with a Crime of Violence)

The Grand Jury further charges:

40.    On or about June 26, 2020, in the Southern District of New York and elsewhere,

JOWENKY NUNEZ, JR., a/k/a "Juju," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha,"

the defendants, during and in relation to a crime of violence for which they may be prosecuted in

a court of the United States, namely, the attempted murder and assault with a dangerous weapon

in aid of racketeering charged in Count Twelve of this Indictment, knowingly did use and carry a

firearm and, in furtherance of such crimes, did possess a firearm, and did aid and abet the use,

carrying, and possession of a firearm, which was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii), and 2.)

## COUNT FOURTEEN
### (Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering)

The Grand Jury further charges:

41.    At all times relevant to this Indictment, OED, as described in Paragraphs One

through Seven of this Indictment, which are repeated and incorporated by reference as though fully

set forth herein, including its leadership, members, and associates, constituted an enterprise, as that

term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact

of individuals that was engaged in, and the activities of which affected, interstate and foreign

commerce. The OED Enterprise constituted an ongoing organization whose members functioned

17

as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

42.    At all times relevant to this Indictment, OED, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving murder, in violation of New York Penal Law, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

43.    On or about July 5, 2020, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from OED, and for the purpose of gaining entrance to and maintaining and increasing position in OED, an enterprise engaged in racketeering activity, as described above, knowingly attempted to murder an individual and assaulted that individual with a dangerous weapon, and aided and abetted the same, to wit, NUNEZ, JR., and RODRIGUEZ-ROSARIO shot a rival gang member in the vicinity of 136th Street, in New York, New York, in violation of New York Penal Law, Sections 125.25, 120.05, 110.00, and 20.00.

(Title 18, United States Code, Sections 1959(a)(3), (a)(5), and 2.)

## COUNT FIFTEEN
### (Discharge of a Firearm in Connection with a Crime of Violence)

The Grand Jury further charges:

44.    On or about July 5, 2020, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the attempted murder and assault with a dangerous weapon

18

in aid of racketeering charged in Count Fourteen of this Indictment, knowingly did use and carry a firearm and, in furtherance of such crimes, did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii), and 2.)

## COUNT SIXTEEN
### (Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering)

The Grand Jury further charges:

45.     At all times relevant to this Indictment, OED, as described in Paragraphs One through Seven of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce.  The OED Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

46.     At all times relevant to this Indictment, OED, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving murder, in violation of New York Penal Law, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

47.     On or about July 18, 2020, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," the defendant, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from OED, and for the purpose of gaining entrance to and maintaining and increasing position in OED, an enterprise engaged in racketeering activity, as described above,

19

knowingly attempted to murder an individual and assaulted that individual with a dangerous weapon, and aided and abetted the same, to wit, in the vicinity of 183rd Street and Audubon Avenue in New York, New York, NUNEZ, JR., shot at an individual, in violation of New York Penal Law, Sections 125.25, 120.14, 110.00, and 20.00.

(Title 18, United States Code, Sections 1959(a)(3), (a)(5), and 2.)

## COUNT SEVENTEEN
### (Discharge of a Firearm in Connection with a Crime of Violence)

The Grand Jury further charges:

48.     On or about July 18, 2020, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the attempted murder and assault with a dangerous weapon in aid of racketeering charged in Count Sixteen of this Indictment, knowingly did use and carry a firearm and, in furtherance of such crimes, did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii), and 2.)

## COUNT EIGHTEEN
### (Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering)

The Grand Jury further charges:

49.     At all times relevant to this Indictment, OED, as described in Paragraphs One through Seven of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce. The OED Enterprise constituted an ongoing organization whose members functioned

20

as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

50.    At all times relevant to this Indictment, OED, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving murder, in violation of New York Penal Law, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

51.    On or about October 22, 2020, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," the defendant, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from OED, and for the purpose of gaining entrance to and maintaining and increasing position in OED, an enterprise engaged in racketeering activity, as described above, knowingly attempted to murder two individuals and assaulted those individuals with a dangerous weapon, and aided and abetted the same, to wit, NUNEZ, JR. drove to Valentine Avenue, near 181st Street, in the Bronx, New York, and shot and struck at least two individuals, in violation of New York Penal Law, Sections 125.25, 120.05, 110.00, and 20.00.

(Title 18, United States Code, Sections 1959(a)(3), (a)(5), and 2.)

## COUNT NINETEEN
### (Discharge of a Firearm in Connection with a Crime of Violence)

The Grand Jury further charges:

52.    On or about October 22, 2020, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the attempted murder and assault with a dangerous weapon in aid of racketeering charged in Count Eighteen of this Indictment, knowingly did use and carry a firearm and, in furtherance of such crimes, did possess

21

a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii), and 2.)

## COUNT TWENTY
### (Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering)

The Grand Jury further charges:

53.    At all times relevant to this Indictment, OED, as described in Paragraphs One through Seven of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce.  The OED Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

54.    At all times relevant to this Indictment, OED, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving murder, in violation of New York Penal Law, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

55.    On or about March 4, 2022, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," the defendant, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from OED, and for the purpose of gaining entrance to and maintaining and increasing position in OED, an enterprise engaged in racketeering activity, as described above, knowingly attempted to murder an individual and assaulted that individual with a dangerous

weapon, and aided and abetted the same, to wit, in the vicinity of 124 Dyckman Street in New

York, New York, NUNEZ, JR. shot at a rival gang member, and in doing so, shot a bystander, in

violation of New York Penal Law, Sections 125.25, 120.05, 110.00, and 20.00.

(Title 18, United States Code, Sections 1959(a)(3), (a)(5), and 2.)

## COUNT TWENTY-ONE
### (Discharge of a Firearm in Connection with a Crime of Violence)

The Grand Jury further charges:

56.     On or about March 4, 2022, in the Southern District of New York and elsewhere,

JOWENKY NUNEZ, JR., a/k/a "Juju," the defendant, during and in relation to a crime of violence

for which he may be prosecuted in a court of the United States, namely, the attempted murder and

assault with a dangerous weapon in aid of racketeering charged in Count Twenty of this

Indictment, knowingly did use and carry a firearm and, in furtherance of such crimes, did possess

a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was brandished

and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii), and 2.)

## COUNT TWENTY-TWO
### (Attempted Murder and Assault with a Dangerous Weapon and Assault Resulting in Serious Bodily Injury in Aid of Racketeering)

The Grand Jury further charges:

57.     At all times relevant to this Indictment, OED, as described in Paragraphs One

through Seven of this Indictment, which are repeated and incorporated by reference as though fully

set forth herein, including its leadership, members, and associates, constituted an enterprise, as that

term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact

of individuals that was engaged in, and the activities of which affected, interstate and foreign

commerce.  The OED Enterprise constituted an ongoing organization whose members functioned

as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

58.     At all times relevant to this Indictment, OED, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving murder, in violation of New York Penal Law, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

59.     On or about February 28, 2023, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," the defendant, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from OED, and for the purpose of gaining entrance to and maintaining and increasing position in OED, an enterprise engaged in racketeering activity, as described above, knowingly attempted to murder an individual and assaulted that individual with a dangerous weapon and that assault resulted in serious bodily injury, and aided and abetted the same, to wit, while incarcerated at the Metropolitan Detention Center in Brooklyn, New York, NUNEZ, JR. attacked and stabbed another inmate, in violation of New York Penal Law, Sections 125.25, 120.10, 120.05, 120.00, 110.00, and 20.00.

(Title 18, United States Code, Sections 1959(a)(3), (a)(5), and 2.)

## COUNT TWENTY-THREE
### (Narcotics Conspiracy)

The Grand Jury further charges:

60.     From at least in or about 2018, up to and including at least in or about July 2022, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," BRIAN HERNANDEZ, a/k/a "Malikai," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, and others known and unknown, intentionally and knowingly did combine,

conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

61.     It was a part and an object of the conspiracy that JOWENKY NUNEZ, JR., a/k/a "Juju," BRIAN HERNANDEZ, a/k/a "Malikai," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

62.     The controlled substances that JOWENKY NUNEZ, JR., a/k/a "Juju," BRIAN HERNANDEZ, a/k/a "Malikai," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, conspired to distribute and possess with intent to distribute were: (i) 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A); (ii) one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A); (iii) 280 grams and more of mixtures and substances containing a detectable amount of cocaine base, in a form commonly known as "crack cocaine," in violation of Title 21, United States Code, Section 841(b)(1)(A); and (iv) mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

## COUNT TWENTY-FOUR
**(Firearms Use, Carrying, and Possession in Connection with a Drug Trafficking Crime)**

The Grand Jury further charges:

63.     From at least in or about 2018, up to and including at least in or about July 2022, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," BRIAN HERNANDEZ, a/k/a "Malikai," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha,"

the defendants, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the controlled substance conspiracy charged in Count Twenty-Three of this Indictment, knowingly did use and carry a firearm and, in furtherance of such crimes, did possess a firearm, and did aid and abet the same.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

<b><u>COUNT TWENTY-FIVE</u></b><br>
<b>(Interstate Transport or Receipt of Firearms)</b>

The Grand Jury further charges:

64.    From at least in or about May 2020, up to and including at least in or about October 2020, in the Southern District of New York and elsewhere, JOWENKY NUNEZ, JR., a/k/a "Juju," and IYAURY RODRIGUEZ-ROSARIO, a/k/a "Bricha," the defendants, not being licensed importers, licensed manufacturers, licensed dealers, and licensed collectors of firearms, within the meaning of Chapter 44, Title 18, United States Code, did willfully and knowingly transport into or receive in the State where they reside firearms purchased or otherwise obtained outside that State, to wit, NUNEZ, JR. and RODRIGUEZ-ROSARIO, New York state residents who are not licensed importers, licensed manufacturers, licensed dealers, or licensed collectors of firearms, purchased firearms through the use of a straw purchaser in Pennsylvania, transferred those firearms into New York from Pennsylvania, and did aid and abet the same.

(Title 18, United States Code, Sections 922(a)(3), 924(a)(1), and 2.)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :

  UNITED STATES OF AMERICA              :

                                                :

  - v. -                                 :      **VERDICT FORM**

                                              :      22 Cr. 293 (JPO)

  JOWENKY NUNEZ, JR.,          :
     a/k/a "Juju,"               :
  BRIAN HERNANDEZ,            :
     a/k/a "Malikai,"            :
  IYAURY RODRIGUEZ-ROSARIO,    :
     a/k/a "Bricha,"            :

                                                :

                    Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## JURY VERDICT

Please indicate each of your verdicts with a check mark (✓)

## COUNT ONE: Racketeering Conspiracy

    1.  How do you find the defendant JOWENKY NUNEZ, JR. with respect to Count One?

            Not Guilty \_\_\_\_\_     Guilty \_\_\_\_\_

    2.  How do you find the defendant BRIAN HERNANDEZ with respect to Count One?

            Not Guilty \_\_\_\_\_     Guilty \_\_\_\_\_

    3.  How do you find the defendant IYAURY RODRIGUEZ-ROSARIO with respect to Count One?

            Not Guilty \_\_\_\_\_     Guilty \_\_\_\_\_

**If you find all the defendants "not guilty" of Count One, please skip to Count Two.**

**If you find any of the defendants "guilty" of Count One, please answer the following questions:**

<u>If and only if</u> you find defendant JOWENKY NUNEZ, JR. guilty of Count One, indicate, with respect to defendant JOWENKY NUNEZ, JR., which types of racketeering acts were committed or intended to be committed in the conspiracy:

    <u>Acts Involving Murder (Committed, Attempted, Aided and Abetted, Conspiracy to Commit)</u>

            Not Proved _____     Proved _____

        If you find that the offense involved acts involving murder, attempted murder, aiding and abetting murder, aiding and abetting attempted murder, or conspiring to commit murder, how many such acts do you find were involved in the offense?

            One _____     Two _____     More than Two _____

    <u>Acts Involving Drug Trafficking</u>

            Not Proved _____     Proved _____

        If you find that the offense involved acts involving drug trafficking, how many such acts do you find were involved in the offense?

            One _____     Two _____     More than Two _____

<u>If and only if</u> you find defendant BRIAN HERNANDEZ guilty of Count One, indicate, with respect to defendant BRIAN HERNANDEZ, which types of racketeering acts were committed or intended to be committed in the conspiracy:

    <u>Acts Involving Murder (Committed, Attempted, Aided and Abetted, Conspiracy to Commit)</u>

            Not Proved _____     Proved _____

         If you find that the offense involved acts involving murder, attempted murder, aiding and abetting murder, aiding and abetting attempted murder, or conspiring to commit murder, how many such acts do you find were involved in the offense?

            One _____     Two _____     More than Two _____

2

Acts Involving Drug Trafficking

        Not Proved _____    Proved _____

    If you find that the offense involved acts involving drug trafficking, how many such acts do you find were involved in the offense?

        One _____    Two _____    More than Two _____

If and only if you find defendant IYAURY RODRIGUEZ-ROSARIO guilty of Count One, indicate, with respect to defendant IYAURY RODRIGUEZ-ROSARIO, which types of racketeering acts were committed or intended to be committed in the conspiracy:

Acts Involving Murder (Committed, Attempted, Aided and Abetted, Conspiracy to Commit)

        Not Proved _____    Proved _____

    If you find that the offense involved acts involving murder, attempted murder, aiding and abetting murder, aiding and abetting attempted murder, or conspiring to commit murder, how many such acts do you find were involved in the offense?

        One _____    Two _____    More than Two _____

Acts Involving Drug Trafficking

        Not Proved _____    Proved _____

    If you find that the offense involved acts involving drug trafficking, how many such acts do you find were involved in the offense?

        One _____    Two _____    More than Two _____

3

**COUNT TWO: Murder in Aid of Racketeering – Richard Dominguez, a/k/a "Chikin" (July 2, 2020)**

1. As to Count Two, how do you find defendant JOWENKY NUNEZ, JR.?

   Not Guilty _____    Guilty _____

2. As to Count Two, how do you find defendant BRIAN HERNANDEZ?

   Not Guilty _____    Guilty _____

3. As to Count Two, how do you find defendant IYAURY RODRIGUEZ-ROSARIO?

   Not Guilty _____    Guilty _____

**COUNT THREE: Murder Through the Use of a Firearm – Richard Dominguez, a/k/a "Chikin" (July 2, 2020)**

1. As to Count Three, how do you find defendant JOWENKY NUNEZ, JR.?

   Not Guilty _____    Guilty _____

2. As to Count Three, how do you find defendant BRIAN HERNANDEZ?

   Not Guilty _____    Guilty _____

3. As to Count Three, how do you find defendant IYAURY RODRIGUEZ-ROSARIO?

   Not Guilty _____    Guilty _____

**COUNT FOUR: Murder in Aid of Racketeering – Israel Cabrera, a/k/a "Gotti," (July 2, 2020)**

1. As to Count Four, how do you find defendant JOWENKY NUNEZ, JR.?

   Not Guilty _____    Guilty _____

2. As to Count Four, how do you find defendant BRIAN HERNANDEZ?

   Not Guilty _____    Guilty _____

3. As to Count Four, how do you find defendant IYAURY RODRIGUEZ-ROSARIO?

   Not Guilty _____    Guilty _____

4

**COUNT FIVE: Murder Through the Use of a Firearm – Israel Cabrera, a/k/a "Gotti,"** **(July 2, 2020)**

1. As to Count Five, how do you find defendant JOWENKY NUNEZ, JR.?

   Not Guilty _____     Guilty _____

2. As to Count Five, how do you find defendant BRIAN HERNANDEZ?

   Not Guilty _____     Guilty _____

3. As to Count Five, how do you find defendant IYAURY RODRIGUEZ-ROSARIO?

   Not Guilty _____     Guilty _____

**COUNT SIX: Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering (January 24, 2020)**

As to Count Six, how do you find defendant BRIAN HERNANDEZ?

   Not Guilty _____     Guilty _____

If and only if you find defendant BRIAN HERNANDEZ guilty of Count Six, indicate whether the Government has proven the following:

   Attempted Murder

   Not Proved _____     Proved _____

   Assault with a Dangerous Weapon

   Not Proved _____     Proved _____

**COUNT SEVEN: Discharge of a Firearm in Connection with a Crime of Violence (January 24, 2020)**

As to Count Seven, how do you find defendant BRIAN HERNANDEZ?

   Not Guilty _____     Guilty _____

If and only if you find defendant BRIAN HERNANDEZ guilty of Count Seven, was the firearm:

5

Discharged

        Yes _____              No_____

Brandished

        Yes _____              No_____


**COUNT EIGHT: Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering (February 2020)**

As to Count Eight, how do you find defendant BRIAN HERNANDEZ?

        Not Guilty _____     Guilty _____

If and only if you find defendant BRIAN HERNANDEZ guilty of Count Eight, indicate whether the Government has proven the following:

Attempted Murder

        Not Proved _____     Proved _____

Assault with a Dangerous Weapon

        Not Proved _____     Proved _____

**COUNT NINE: Discharge of a Firearm in Connection with a Crime of Violence (February 2020)**

As to Count Nine, how do you find defendant BRIAN HERNANDEZ?

        Not Guilty _____     Guilty _____

If and only if you find defendant BRIAN HERNANDEZ guilty of Count Nine, was the firearm:

Discharged

        Yes _____              No_____

6

<u>Brandished</u>

Yes _____            No_____

**COUNT TEN:** **Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering** **(May 15, 2020)**

As to Count 10, how do you find defendant BRIAN HERNANDEZ?

Not Guilty _____        Guilty _____

<u>If and only if</u> you find defendant BRIAN HERNANDEZ guilty of Count 10, indicate whether the Government has proven the following:

<u>Attempted Murder</u>

Not Proved _____        Proved _____

<u>Assault with a Dangerous Weapon</u>

Not Proved _____        Proved _____

**COUNT ELEVEN:** **Discharge of a Firearm in Connection with a Crime of Violence** **(May 15, 2020)**

As to Count 11, how do you find defendant BRIAN HERNANDEZ?

Not Guilty _____        Guilty _____

<u>If and only if</u> you find defendant BRIAN HERNANDEZ guilty of Count 11, was the firearm:

<u>Discharged</u>

Yes _____            No_____

<u>Brandished</u>

Yes _____            No_____

**COUNT TWELVE:** **Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering** **(June 26, 2020)**

7

1.  As to Count 12, how do you find defendant JOWENKY NUNEZ, JR.?

    Not Guilty _____        Guilty _____

2.  As to Count 12, how do you find defendant IYAURY RODRIGUEZ-ROSARIO?

    Not Guilty _____        Guilty _____

If and only if you find one or more of the defendants guilty of Count 12, indicate whether the Government has proven the following:

    Attempted Murder

        Proved _____        Not Proved _____

    Assault with a Dangerous Weapon

        Proved _____        Not Proved _____


**COUNT THIRTEEN: Discharge of a Firearm in Connection with a Crime of Violence (June 26, 2020)**

1.  As to Count 13, how do you find defendant JOWENKY NUNEZ, JR.?

    Not Guilty _____        Guilty _____

2.  As to Count 13, how do you find defendant IYAURY RODRIGUEZ-ROSARIO?

    Not Guilty _____        Guilty _____

If and only if you find one or more of the defendants guilty of Count 13, was the firearm:

    Discharged

        Yes _____        No _____

    Brandished

        Yes _____        No _____

8

**COUNT FOURTEEN: Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering (July 5, 2020)**

1. As to Count 14, how do you find defendant JOWENKY NUNEZ, JR.?

    Not Guilty _____        Guilty _____

2. As to Count 14, how do you find defendant IYAURY RODRIGUEZ-ROSARIO?

    Not Guilty _____        Guilty _____

If and only if you find one or more of the defendants guilty of Count 14, indicate whether the Government has proven the following:

    Attempted Murder

        Proved _____          Not Proved_____

    Assault with a Dangerous Weapon

        Proved _____          Not Proved_____


**COUNT FIFTEEN: Discharge of a Firearm in Connection with a Crime of Violence (July 5, 2020)**

1. As to Count 15, how do you find defendant JOWENKY NUNEZ, JR.?

    Not Guilty _____        Guilty _____

2. As to Count 15, how do you find defendant IYAURY RODRIGUEZ-ROSARIO?

    Not Guilty _____        Guilty _____

If and only if you find one or more of the defendant JOWENKY NUNEZ, JR. guilty of Count 15, was the firearm:

    Discharged

        Yes _____            No_____

    Brandished

        Yes _____            No_____

9

**COUNT SIXTEEN:** **Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering (July 18, 2020)**

As to Count 16, how do you find defendant JOWENKY NUNEZ, JR.?

        Not Guilty _____      Guilty _____

If and only if you find the defendant JOWENKY NUNEZ, JR. guilty of Count 16, indicate whether the Government has proven the following:

        Attempted Murder

           Proved _____         Not Proved_____

        Assault with a Dangerous Weapon

           Proved _____         Not Proved_____

**COUNT SEVENTEEN:** **Discharge of a Firearm in Connection with a Crime of Violence (July 18, 2020)**

As to Count 17, how do you find defendant JOWENKY NUNEZ, JR.?

        Not Guilty _____      Guilty _____

If and only if you find the defendant JOWENKY NUNEZ, JR. guilty of Count 17, was the firearm:

        Discharged

           Yes _____         No_____

        Brandished

           Yes _____         No_____

**COUNT EIGHTEEN:** **Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering (October 22, 2020)**

10

As to Count 18, how do you find defendant JOWENKY NUNEZ, JR.?

Not Guilty _____         Guilty _____

If and only if you find the defendant JOWENKY NUNEZ, JR. guilty of Count 18, indicate whether the Government has proven the following:

   Attempted Murder

Proved _____                    Not Proved_____

   Assault with a Dangerous Weapon

Proved _____                    Not Proved_____

**COUNT NINETEEN: Discharge of a Firearm in Connection with a Crime of Violence (October 22, 2020)**

As to Count 19, how do you find defendant JOWENKY NUNEZ, JR.?

Not Guilty _____         Guilty _____

If and only if you find the defendant JOWENKY NUNEZ, JR. guilty of Count 19, was the firearm:

      Discharged

Yes _____              No_____

      Brandished

Yes _____              No_____

**COUNT TWENTY: Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering (March 4, 2022)**

As to Count 20, how do you find defendant JOWENKY NUNEZ, JR.?

Guilty _____         Not Guilty _____

If and only if you find the defendant JOWENKY NUNEZ, JR. guilty of Count 20, indicate whether the Government has proven the following:

Attempted Murder

       Proved _____       Not Proved_____

Assault with a Dangerous Weapon

       Proved _____       Not Proved_____

**COUNT TWENTY-ONE: Discharge of a Firearm in Connection with a Crime of Violence (March 4, 2022)**

As to Count 21, how do you find defendant JOWENKY NUNEZ, JR.?

       Not Guilty _____       Guilty _____

If and only if you find the defendant JOWENKY NUNEZ, JR. guilty of Count 21, was the firearm:

Discharged

       Yes _____       No_____

Brandished

       Yes _____       No_____

**COUNT TWENTY-TWO: Attempted Murder and Assault with a Dangerous Weapon and Assault Resulting in Serious Bodily Injury in Aid of Racketeering (February 28, 2023)**

As to Count 22, how do you find defendant JOWENKY NUNEZ, JR.?

       Not Guilty _____       Guilty _____

If and only if you find the defendant JOWENKY NUNEZ, JR. guilty of Count 22, indicate whether the Government has proven the following:

Attempted Murder

       Proved _____       Not Proved_____

Assault with a Dangerous Weapon

       Proved _____       Not Proved_____

12

<u>Assault Resulting in Serious Bodily Injury</u>

Proved _____          Not Proved_____


**COUNT TWENTY-THREE: Narcotics Conspiracy**

1.  How do you find the defendant JOWENKY NUNEZ, JR. with respect to Count 23?

    Not Guilty _____          Guilty _____

2.  How do you find the defendant BRIAN HERNANDEZ with respect to Count 23?

    Not Guilty _____          Guilty _____

3.  How do you find the defendant IYAURY RODRIGUEZ-ROSARIO with respect to Count 23?

    Not Guilty _____          Guilty _____

**If you find all the defendants "not guilty" of Count 23, please skip to Count 25 (skip Count 24 entirely).**

1.  <u>If and only</u> if you find the defendant JOWENKY NUNEZ, JR. guilty of Count 23, indicate, with respect to defendant JOWENKY NUNEZ, JR., whether the Government has proven the following:

    How much, if any, heroin did the conspiracy charged in Count 23 involve:

    _____ 1 kilogram or more
    _____ 100 grams or more, but less than 1 kilogram
    _____ Less than 100 grams

    How much, if any, fentanyl did the conspiracy charged in Count 23 involve:

    _____ 400 grams or more
    _____ 40 grams or more, but less than 400 grams
    _____ Less than 40 grams

13

How much, if any, cocaine base did the conspiracy charged in Count 23 involve:

      _____ 280 grams or more
      _____ 28 grams or more, but less than 280 grams
      _____ Less than 28 grams

Was a goal of the conspiracy to distribute or possess with intent to distribute cocaine?

      No _____      Yes _____

2.   <u>If and only</u> if you find the defendant BRIAN HERNANDEZ guilty of Count 23, indicate, with respect to defendant BRIAN HERNANDEZ, whether the Government has proven the following:

How much, if any, heroin did the conspiracy charged in Count 23 involve:

      _____ 1 kilogram or more
      _____ 100 grams or more, but less than 1 kilogram
      _____ Less than 100 grams

How much, if any, fentanyl did the conspiracy charged in Count 23 involve:

      _____ 400 grams or more
      _____ 40 grams or more, but less than 400 grams
      _____ Less than 40 grams

How much, if any, cocaine base did the conspiracy charged in Count 23 involve:

      _____ 280 grams or more
      _____ 28 grams or more, but less than 280 grams
      _____ Less than 28 grams

Was a goal of the conspiracy to distribute or possess with intent to distribute cocaine?

      No _____      Yes _____

3.   <u>If and only</u> if you find the defendant IYAURY RODRIGUEZ-ROSARIO guilty of Count 23, indicate, with respect to defendant IYAURY RODRIGUEZ-ROSARIO whether the Government has proven the following:

14

How much, if any, heroin did the conspiracy charged in Count 23 involve:

      _____ 1 kilogram or more
      _____ 100 grams or more, but less than 1 kilogram
      _____ Less than 100 grams

How much, if any, fentanyl did the conspiracy charged in Count 23 involve:

      _____ 400 grams or more
      _____ 40 grams or more, but less than 400 grams
      _____ Less than 40 grams

How much, if any, cocaine base did the conspiracy charged in Count 23 involve:

      _____ 280 grams or more
      _____ 28 grams or more, but less than 280 grams
      _____ Less than 28 grams

Was a goal of the conspiracy to distribute or possess with intent to distribute cocaine?

      No \_\_\_\_\_      Yes \_\_\_\_\_

15

**COUNT TWENTY-FOUR: Firearms Use, Carrying, and Possession in Connection with a Drug Trafficking Crime**

**Only consider Count 24 if you have found at least one of the defendants guilty on Count 23 and only consider Count 24 as to that defendant or those defendants. If you found all of the defendants not guilty of the offense charged in Count 23, please proceed to Count 25.**

1. How do you find the defendant JOWENKY NUNEZ, JR. with respect to Count 24?

    Not Guilty _____     Guilty _____

2. How do you find the defendant BRIAN HERNANDEZ with respect to Count 24?

    Not Guilty _____     Guilty _____

3. How do you find the defendant IYAURY RODRIGUEZ-ROSARIO with respect to Count 24?

    Not Guilty _____     Guilty _____

**COUNT TWENTY-FIVE: Interstate Transport or Receipt of Firearms**

1. How do you find the defendant JOWENKY NUNEZ, JR. with respect to Count 25?

    Not Guilty _____     Guilty _____

2. How do you find the defendant IYAURY RODRIGUEZ-ROSARIO with respect to Count 25?

    Not Guilty _____     Guilty _____

_____        _____

Foreperson                                          Date

16